# No. 25-1361

IN THE

# United States Court of Appeals

FOR THE

# Seventh Circuit

## Tanya Svoboda and
## Antonella M. Ortiz Colosi,

*Plaintiffs-Appellees,*

**v.**

## Amazon.com, Inc. and
## Amazon.com Services LLC,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Northern District of Illinois, No. 1:21-cv-05336,
District Judge Jorge L. Alonso

## APPELLANTS' OPENING BRIEF

MORGAN, LEWIS & BOCKIUS LLP

Stephanie Schuster
1111 Pennsylvania Avenue, NW
Washington, DC 20004
202.739.3000

Matthew D. Klayman
2222 Market Street
Philadelphia, PA 19103
215.963.5000

Elizabeth Herrington
    *Counsel of Record*
Alborz Hassani
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
312.324.1000

Ari Micah Selman
101 Park Avenue
New York, NY 10178
212.309.6000

*Counsel for Appellants*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: Svoboda, et al. v. Amazon.com Inc. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Amazon.com Inc. and Amazon.com Services, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Morgan, Lewis & Bockius LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Amazon.com Services, LLC is wholly owned by Amazon.com Inc. Amazon.com Inc. has no parent company.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly held company owns 10% or more of Amazon.com Inc.'s stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: _____  Date: January 15, 2025

Attorney's Printed Name: Elizabeth B. Herrington

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ✔  No ☐

Address: Morgan, Lewis & Bockius LLP, 110 N. Wacker Drive, Suite 2800

Chicago, IL 60606-1511

Phone Number: (312) 324-1000    Fax Number: (312) 324-1001

E-Mail Address: beth.herrington@morganlewis.com

rev. 12/19 AK

Save As      Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: Svoboda, et al. v. Amazon.com Inc. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Amazon.com Inc. and Amazon.com Services, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Morgan, Lewis & Bockius LLP

(3)    If the party, amicus or intervenor is a corporation:

        i)    Identify all its parent corporations, if any; and

            Amazon.com Services, LLC is wholly owned by Amazon.com Inc.  Amazon.com Inc. has no parent company.

        ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

            No publicly held company owns 10% or more of Amazon.com Inc.'s stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: _____   Date: January 15, 2025

Attorney's Printed Name: Alborz Hassani

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: Morgan, Lewis & Bockius LLP, 110 N. Wacker Drive, Suite 2800

        Chicago, IL 60606-1511

Phone Number: (312) 324-1000      Fax Number: (312) 324-1001

E-Mail Address: al.hassani@morganlewis.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: Svoboda, et al. v. Amazon.com Inc. et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
        Amazon.com Inc. and Amazon.com Services, LLC

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
        Morgan, Lewis & Bockius LLP

(3)     If the party, amicus or intervenor is a corporation:

        i)      Identify all its parent corporations, if any; and

                Amazon.com Services, LLC is wholly owned by Amazon.com Inc.  Amazon.com Inc. has no parent company.

        ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

                No publicly held company owns 10% or more of Amazon.com Inc.'s stock.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: _____     Date: January 15, 2025

Attorney's Printed Name: Matthew D. Klayman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [ ]     No [✔]

Address: Morgan, Lewis & Bockius LLP, 1701 Market Street

         Philadelphia, PA 19103

Phone Number: (215) 963-5000                    Fax Number: (215) 963-5001

E-Mail Address: matthew.klayman@morganlewis.com

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1361

Short Caption: Svoboda, et al. v. Amazon.com Inc. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Amazon.com Inc. and Amazon.com Services, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Morgan, Lewis & Bockius LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Amazon.com Services, LLC is wholly owned by Amazon.com Inc. Amazon.com Inc. has no parent company.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No publicly held company owns 10% or more of Amazon.com Inc.'s stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Stephanie Schuster          Date: March 18, 2025

Attorney's Printed Name: Stephanie Schuster

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [ ]     No [✔]

Address: Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Avenue, NW

Washington, DC 20004-2541

Phone Number: (202) 739-3000          Fax Number: (202) 739-3001

E-Mail Address: stephanie.schuster@morganlewis.com

rev. 12/19 AK

iv

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1361

Short Caption: Svoboda, et al. v. Amazon.com Inc. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Amazon.com Inc. and Amazon.com Services, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Morgan, Lewis & Bockius LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Amazon.com Services, LLC is wholly owned by Amazon.com Inc. Amazon.com Inc. has no parent company.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly held company owns 10% or more of Amazon.com Inc.'s stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Ari M. Selman     Date: March 18, 2025

Attorney's Printed Name: Ari M. Selman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐   No ✔

Address: Morgan, Lewis & Bockius LLP, 101 Park Avenue

New York, NY 10178-0060

Phone Number: (212) 309-6000     Fax Number: (212) 309-6001

E-Mail Address: ari.selman@morganlewis.com

rev. 12/19 AK

v

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT .................................................. i

TABLE OF CONTENTS ............................................................................. vi

TABLE OF AUTHORITIES ....................................................................... viii

STATEMENT OF JURISDICTION ............................................................... 1

STATEMENT OF THE ISSUES ................................................................... 3

INTRODUCTION ....................................................................................... 4

STATEMENT OF THE CASE ...................................................................... 6

I.     The Statute ................................................................................. 6

II.    The Facts ................................................................................... 7

      A.    Amazon Shoppers May Choose To Try On Lipstick And Eyewear Virtually From Their Phones And Other Mobile Devices. ........................................................................ 7

      B.    Amazon's Data Concerning VTO Use Are Limited. .................... 9

      C.    Plaintiffs Cannot Accurately Recall When Or From Where They Used Amazon's VTO Features. ......................................... 11

III.   The Proceedings ....................................................................... 12

SUMMARY OF ARGUMENT ..................................................................... 14

ARGUMENT ............................................................................................ 17

I.     Plaintiffs' Damages Theory Undermines The Superiority Of The Class Action Device. ................................................................ 18

      A.    The Availability Of Significant Individual Damages Under BIPA Defeats Superiority. ............................................. 18

      B.    The Availability Of Significant Classwide Damages Under BIPA Raises Due Process Concerns And Defeats Superiority. ................................................................................ 22

      C.    The District Court's Other Errors Preclude Superiority. ......... 25

II.    Individualized Questions Concerning Use Of VTO Features "While In Illinois" Defeat Predominance And Superiority. ................ 26

      A.    Amazon's Data Cannot Solve The Problems Arising From Plaintiffs' Need To Prove VTO Use "While In Illinois." ............ 28

|   | B. | Claim-Form Affidavits Cannot Solve The Problems Arising From Plaintiffs' Need To Prove VTO Use "While In Illinois." | 34 |

| III. | | Individualized Questions Concerning Discretionary Damages Defeat Predominance And Superiority | 38 |

CONCLUSION.......................................................................................................... 44

CERTIFICATES OF COMPLIANCE......................................................................... 45

CERTIFICATE OF SERVICE.................................................................................... 46

CIRCUIT RULE 30(d) STATEMENT........................................................................ 47

REQUIRED SHORT APPENDIX

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ............................................................................................... 17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................... 18

*Andrews v. Chevy Chase Bank*,
545 F.3d 570 (7th Cir. 2008) ................................................................. 19, 20, 27, 43

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ............................................................................................... 20

*Avery v. State Farm Mut. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) .................................................................................... 27

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) ................................................................... 35, 36, 37

*Bell v. PNC Bank, Nat'l Ass'n*,
800 F.3d 360 (7th Cir. 2015) ................................................................................. 17

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ................................................................................. 18

*Campbell v. Facebook, Inc.*,
315 F.R.D. 250 (N.D. Cal. 2016) ........................................................................... 41

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ........................................................................... 18, 35

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) .................................................................................. 19

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......................................................................................... 17, 38

*Cothron v. White Castle Sys., Inc.*,
2023 IL 128004, 216 N.E.3d 918....................................................................*passim*

*Dancel v. Groupon, Inc.*,
949 F.3d 999 (7th Cir. 2019) ................................................................................. 34

*Eddlemon v. Bradley University*,
65 F.4th 335 (7th Cir. 2023)...................................................................................... 42

*Frahm v. Equitable Life Assurance Soc'y of the U.S.*,
137 F.3d 955 (7th Cir. 1998) ................................................................................... 23

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1981) ................................................................................................ 17

*Glover v. Standard Fed. Bank*,
283 F.3d 953 (8th Cir. 2002) ................................................................................... 19

*Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*,
29 F.4th 839 (7th Cir. 2022).................................................................................... 26

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ................................................................................................ 17

*Howard v. Cook Cnty. Sheriff's Off.*,
989 F.3d 587 (7th Cir. 2021) ................................................................................... 26

*In re Facebook Biometric Info. Privacy Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) ............................................................................. 37

*In re Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir. 1995) ................................................................................... 24

*In re Sprint Nextel Corp.*,
593 F.3d 669 (7th Cir. 2010) ................................................................................... 31

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019)................................................................................ 18

*Jacks v. DirectSat USA, LLC*,
118 F.4th 888 (7th Cir. 2024).................................................................................. 17

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ................................................................................. 18

*Kline v. Coldwell, Banker & Co.*,
508 F.2d 226 (9th Cir. 1974) ................................................................................... 22

*Krakauer v. Dish Network LLC*,
No. 1:14-cv-333, ECF No. 293 (M.D.N.C. Jan. 19, 2017) ...................................... 41

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003) ............................................................................... 22

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) ................................................................................. 18

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ................................................................................. 26

*Monroy v. Shutterfly, Inc.*,
   2017 WL 4099846 (N.D. Ill. 2017) ........................................................................ 27

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ................................................................. 35, 36, 43

*Murray v. GMAC Mortgage Corp.*,
   434 F.3d 948 (7th Cir. 2006) ........................................................................ 21, 22

*Parker v. Time Warner Ent. Co.*,
   331 F.3d 13 (2d Cir. 2003) ..................................................................................... 23

*Reyes v. Netdeposit, LLC*,
   802 F.3d 469 (3d Cir. 2015) ................................................................................... 18

*Riffey v. Rauner*,
   910 F.3d 314 (7th Cir. 2018) ................................................................................. 27

*Rivera v. Google Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) ................................................................. 27

*Rogers v. BNSF Ry. Co.*,
   680 F. Supp. 3d 1027 (N.D. Ill. 2023) ................................................................. 42

*Rosenbach v. Six Flags Ent. Corp.*,
   2019 IL 123186, 129 N.E.3d 1197 .................................................................... 7, 21

*Schwartz v. Supply Network, Inc.*,
   2024 WL 4871408 (N.D. Ill. 2024) .......................................................................... 7

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010) ..................................................................................... 19

*Stillmock v. Weis Markets, Inc.*,
   385 F. App'x 267 (4th Cir. 2010) .......................................................................... 24

*Tapia-Rendon v. United Tape & Finishing Co.*,
   2023 WL 5228178 (N.D. Ill. 2023) ........................................................................ 39

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ......................................................................................... 26, 43

*Vance v. Amazon.com, Inc.*,
  2022 WL 12306231 (W.D. Wash. Oct. 17, 2022) ................................................... 27

*Vance v. Microsoft Corp.*,
  2022 WL 9983979 (W.D. Wash. Oct. 17, 2022) ................................................... 27

*Wakefield v. ViSalus, Inc.*,
  51 F.4th 1109 (9th Cir. 2022).................................................................................. 23

*Wal-Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................... 28, 35

*Williams v. Country Mut. Ins. Co.*,
  2015 WL 9463901 (Ill. App. Ct. 2015) ................................................................. 41

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) .................................................................................. 18

*Zinser v. Accufix Rsch. Inst.*,
  253 F.3d 1180 (9th Cir. 2001) ................................................................................ 20

**STATUTES**

740 ILCS 14/1 *et seq.*.................................................................................................... 1

740 ILCS 14/15(a) ........................................................................................................... 6

740 ILCS 14/15(b) ........................................................................................................... 6

740 ILCS 14/20.......................................................................................................... 7, 38

740 ILCS 14/20(a)(2).................................................................................................... 21

740 ILCS 14/20(a)(3)............................................................................ 7, 20, 21, 25

17 U.S.C. § 504(c)(1) .................................................................................................... 41

28 U.S.C. § 1292(e)......................................................................................................... 2

28 U.S.C. § 1332(d)(2).................................................................................................... 1

28 U.S.C. § 1446(b)(1).................................................................................................... 1

**RULES**

Fed. R. Civ. P. 23 ..................................................................................... 17, 35, 36, 38

Fed. R. Civ. P. 23(a)..................................................................................................... 17

Fed. R. Civ. P. 23(b) ...................................................................................................... 17

Fed. R. Civ. P. 23(b)(3).........................................................................................*passim*

Fed. R. Civ. P. 23(f)......................................................................................... 2, 14, 26

**OTHER AUTHORITIES**

MAXMIND *available at* https://www.maxmind.com/en/geoip-accuracy-
comparison?country=US&resolution=100&connection_type=only_cellular&ip_fa
mily=ipv4_only#results ..................................................................................... 10, 31

## STATEMENT OF JURISDICTION

Plaintiffs sued Defendants Amazon.com, Inc. and Amazon.com Services LLC (together, "Amazon") on behalf of a now-certified class for alleged violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. Plaintiffs commenced this action in state court in Cook County, Illinois and served Amazon on September 9, 2021. D. Ct. ECF No. 1 ¶ 6. Amazon timely removed the action to the U.S. District Court for the Northern District of Illinois on October 7, 2021. *Id.*; *see* 28 U.S.C. § 1446(b)(1). There is minimal diversity of citizenship because (1) Defendants are citizens of Delaware and Washington (each is a Delaware entity with a principal place of business in Washington), A97 (Am. Compl. ¶¶ 8, 11); and (2) Plaintiffs are citizens of Illinois, *id.* (Am. Compl. ¶¶ 6–7). Plaintiffs allege that the putative class includes more than 100 members, A96 (Am. Compl. ¶ 4) (alleging "thousands if not millions" of members), and discovery has shown that the certified class includes hundreds of thousands of members. Plaintiffs seek damages of at least $1,000 per class member, A110–12 (Am. Compl. ¶¶ 82, 91), so the amount in controversy exceeds $5 million exclusive of interests and costs. The district court therefore has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2).

The district court granted Plaintiffs' motion for class certification on March 30, 2024. A1–35. Amazon moved for reconsideration of that order on April 11, 2024, D. Ct. ECF No. 295, and the district court denied that motion on January 6, 2025, A36–37. On January 16, 2025, Amazon timely petitioned for permission to file an interlocutory appeal of the district court's order certifying the class, and this Court

1

granted the petition on March 3, 2025. ECF No. 1. This Court therefore has appellate jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f).

## STATEMENT OF THE ISSUES

1.     Whether a class action is superior to individual litigation where Plaintiffs press a damages theory that seeks an average recovery of $60,000 per class member, with hundreds of individual class members holding claims for more than $1,000,000.

2.     Whether the absence of a common, reliable method for identifying whether class members used the challenged technology on their mobile devices while physically located *in Illinois*—a prerequisite for liability—presents individualized issues that defeat predominance and superiority.

3.     Whether the discretionary nature of the claimed statutory damages, and the inherently plaintiff-specific analyses of the equities that such discretion entails, present individualized issues that defeat predominance and superiority.

## INTRODUCTION

The district court certified an enormous, poorly defined class seeking ***billions of dollars*** in statutory damages. Plaintiffs claim Amazon violated Illinois's Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*., by collecting and storing biometric identifiers when customers used one of Amazon's virtual try-on ("VTO") technologies on their mobile devices to see how makeup and eyewear products would look on their faces. The district court certified a class believed to include hundreds of thousands of individuals who used an Amazon VTO feature "while in Illinois," A9; A33, and who Plaintiffs contend are entitled to $5,000 ***for each use*** of a VTO feature. That decision must be reversed based on three distinct errors, each of which independently precludes class certification.

***First***, a class action is not superior because individual class members have real incentives to litigate their own claims due to the magnitude of their potential recoveries. A majority of class members could bring individual BIPA actions and recover, under Plaintiffs' view of damages, at least ***$30,000 each***, plus attorneys' fees and costs. The average class member's recovery would be even higher—at least ***$60,000 each***—while several hundred class members could receive at least ***$1,000,000 each***, plus attorneys' fees and costs. Amazon is aware of no other consumer class that has ever been certified where the potential recovery for individual class members approaches this sum. Worse, resolving those sizeable claims in a class action would require extensive reliance on claims-form affidavits by class members, depriving Amazon of the ability to test those claims through

traditional discovery or cross-examination. Individual BIPA actions, by contrast, would afford Amazon that opportunity and thereby preserve its due process rights in a way that a class action would not.

*Second*, BIPA only applies to conduct that occurred within Illinois, yet this territoriality requirement cannot be resolved through common proof here. Plaintiffs have no reliable means to prove on a classwide basis whether any individual was in Illinois when her biometric identifiers were allegedly collected and stored. Tens of thousands of individual hearings would be needed to establish whether each class member was physically located in Illinois each time she used VTO technology. The need for such individual proof defeats predominance and superiority and bars class certification.

*Third*, whether and to what extent statutory damages are awarded under BIPA are matters of discretion. Thus, whether a particular class member is entitled to any statutory damages (and, if so, in what amount) requires consideration of the myriad individual circumstances of each alleged violation—here including whether the class member: (i) used VTO technology opportunistically to inflate and multiply her claimed damages while this case was pending; (ii) understood that VTO technology used her facial data, based on the specific disclosures Amazon made in connection with the VTO features; and (iii) would perceive any invasion of her privacy, given any facial data captured by the VTO technology never leaves the user's mobile device and is immediately deleted from her device when the VTO feature is

closed. Because these circumstances vary drastically for each class member in this case, they present individual issues that defeat predominance and superiority.

Each issue, standing alone, is fatal to class certification. The district court abused its discretion by certifying the class anyway, and its class certification order should be reversed.

## STATEMENT OF THE CASE

### I. The Statute

Plaintiffs claim Amazon collected and stored their biometric identifiers in violation of Sections 15(a) and 15(b) of BIPA.

- Section 15(a) requires private entities in possession of biometric identifiers to develop, publish, and comply with a written policy that establishes a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a).

- Section 15(b) prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric identifier or biometric information unless they first (1) inform the person in writing that biometric identifiers or information will be collected or stored; (2) inform the person of the specific purpose and length of term for which such biometric information is being collected, stored, and used; and (3) receive a written release signed by the person. 740 ILCS 14/15(b).

A separate BIPA claim accrues "with every scan" of biometric data until the informed written consent required by BIPA is secured. *Cothron v. White Castle Sys.,*

*Inc.*, 2023 IL 128004, ¶ 45, 216 N.E.3d 918, 929.[1]  Accordingly, an individual who chooses to scan biometric data repeatedly may accrue hundreds of BIPA claims ***daily***.

A plaintiff need not suffer any actual damages to invoke BIPA's private right of action.  *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 36, 129 N.E.3d 1197, 1206–07.  Here, Plaintiffs do not claim they suffered any actual damages and instead seek to recover statutory damages only.  A113 (Am. Compl. Prayer for Relief).  A prevailing plaintiff "may recover" statutory damages of up to $1,000 for negligent violations and up to $5,000 for intentional or reckless violations.  740 ILCS 14/20.  BIPA's use of the permissive "may," rather than the mandatory "shall," indicates that statutory damages under BIPA are discretionary.  *See Cothron*, 2023 IL 128004, ¶ 42, 216 N.E.3d at 929.  In addition to statutory damages for plaintiffs who suffer no actual damages, successful BIPA plaintiffs also are entitled to "reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses."  740 ILCS 14/20(a)(3).

## II.    The Facts

### A.    Amazon Shoppers May Choose To Try On Lipstick And Eyewear Virtually From Their Phones And Other Mobile Devices.

Amazon offers shoppers technology that lets them virtually "try on" certain products from their mobile devices.  These VTO features use augmented reality to overlay certain makeup and eyewear products onto images of a face, enabling a

---

[1] A recent amendment to BIPA addressed this issue to cap statutory damages at $1,000 or $5,000 per plaintiff, rather than per scan, but several courts have thus far held that the amendment applies only prospectively.  *See, e.g.*, *Schwartz v. Supply Network, Inc.*, 2024 WL 4871408, at *5 (N.D. Ill. 2024).

shopper to see how a product might look before purchasing it.  A277–78 (Suresh Dep. Tr. 14:10–18, 18:2–19:4).  Use of these features is entirely optional and voluntary. A407 (Colosi Dep. Tr. 69:18–20).  Shoppers use these features at no cost, and there is no limit to the number of times a shopper may use them.

A shopper choosing to use a VTO feature must acknowledge a disclosure about the feature and give Amazon permission to access her camera.  A283–84 (Suresh Dep. Tr. 197:16–200:12); A291.  She then must select "live mode" (where the overlay appears on a "live" image coming from the shopper's camera) or "model mode" (where the image appears on a stock image of a model, not the shopper).  A279–80 (Suresh Dep. Tr. 78:15–82:8).  Some versions of the VTO feature also have a "photo upload mode" (where the overlay appears on an image uploaded by the shopper).  A177 (Suresh Dep. Tr. 221:11–16).

Amazon's VTO features use either of two technologies.  One technology was developed in-house (the "Amazon VTO Technology") and works differently depending on whether the overlay involves beauty products (such as lipstick) or eyewear products (such as glasses).  For lip products, the technology detects approximately twenty two-dimensional landmarks for boundaries of the lip region, sends information about the product (*e.g.*, the shade and gloss level of a lipstick) to the shopper's device, and then overlays that information onto the image.  A281–82 (Suresh Dep. Tr. 132:9–15, 142:23–143:5).  For eyewear products, the technology detects different landmarks of the eyes and nose region and then overlays an image of the product in the correct location.  A345 (Lou Dep. Tr. 64:12–21).

The second technology is a third party's intellectual property, which Amazon licenses (the "Modiface VTO Technology"). A167–69 (Suresh Dep. Tr. 14:12–17:13). Both technologies work on mobile devices only. A424–25.

## B. Amazon's Data Concerning VTO Use Are Limited.

Amazon's data concerning shoppers' use of VTO features are limited in key respects:

- Amazon records a shopper's use of a VTO feature only if the shopper is logged into an Amazon account at the time. However, there is no data reflecting shoppers' Customer ID Numbers when they are not logged into an Amazon account—for example, when a shopper does not have an Amazon account. A416 (Pham Decl. ¶ 9).

- Amazon records that a shopper used the Modiface VTO Technology only when that shopper adds a product to his or her virtual cart. A416 (Pham Decl. ¶ 8). When a shopper does not add a product to his or her virtual cart, Amazon has no data reflecting that shopper's use of the Modiface VTO Feature.

- Even when a shopper uses a VTO feature while logged into an Amazon account and Amazon records that use, Amazon's data do not reflect the identity of the person who used the VTO feature and reflect only the name of the account holder. A shopper may log into his or her own account to use the VTO feature, but a shopper can easily use a VTO feature on a device while logged into a friend or family member's account.

In addition, Amazon's data do not reliably identify the state in which any VTO use took place. Each recorded VTO use is associated with an Internet Protocol ("IP") address that may correlate generally with geography, but does not correspond to state lines and thus does not establish whether the use occurred in Illinois or a neighboring state. A364–66 (Stangl Decl. ¶¶ 12–13, 16). Some data reflect Amazon's best guess based on available IP information as to where a shopper was located when using a VTO feature, but those guesses are unreliable. A366 (Stangl Decl. ¶ 18). The third-party service Amazon uses for location approximation is, at best, only 74% accurate when it comes to identifying whether an IP address is within 100 kilometers of a given U.S. city,[2] A366–67 (Stangl Decl. ¶ 19), while some recorded uses of the Modiface VTO Feature have less than 85% confidence that it has accurately identified the shopper's state, A7.

Each Amazon account has a billing address corresponding to the primary payment card associated with that account, A489–90 (Ahmed Dep. Tr. 76:19–25), but this billing address does not indicate where the shopper was located when using the VTO feature. Indeed, because Amazon's VTO features are mobile technologies, they are often used outside the user's home. Moreover, a shopper's billing address does not necessarily indicate where she actually resides. An Amazon shopper may have a primary or secondary residence in a different location than the address she uses for

---

[2] Other evidence suggests that the third-party service's location approximations are only 55% accurate—little better than a coin flip. *See* GeoIP® accuracy comparison for locations worldwide, MAXMIND (2025)*,* https://www.maxmind.com/en/geoip-accuracy-comparison?country=US&resolution=100&connection_type=only_cellular &ip_family=ipv4_only#results (last accessed Apr. 14, 2025).

billing purposes or may change her residence without updating her billing address. Or an Amazon shopper may use another person's payment card (*e.g.*, a college student may use her parent's credit card), with an address different than her own.

### C. Plaintiffs Cannot Accurately Recall When Or From Where They Used Amazon's VTO Features.

Amazon's business records show that Plaintiffs used the Modiface VTO Technology (not the Amazon VTO Technology) only in "model mode" (not "photo upload mode" or "live mode") in Illinois and only to try on lip products (not eyewear products). To contradict those records and support their claims that they used VTO features while in Illinois, Plaintiffs rely exclusively on their individual testimony.

Plaintiff Svoboda testified that she used the Modiface VTO Technology while shopping for lipstick on Amazon's mobile website in 2020. A394 (Svoboda Dep. Tr. 66:20–22, 67:7–12). She testified that she used the "photo upload mode" to try on various shades of lipstick, A395 (Svoboda Dep. Tr. 70:23–71:9), but the only Amazon record of Plaintiff Svoboda ever using a VTO feature in Illinois shows that she used it in "model mode," A417 (Pham Decl. ¶ 14). There is no record of Plaintiff Svoboda ever using the Amazon VTO Technology or using any VTO feature to apply any product (lip or eyewear) to her face in Illinois. Plaintiff Svoboda could not recall the details of what disclosures she received. *See* A395 (Svoboda Dep. Tr. 72:16–73:9).

Plaintiff Colosi testified that she used a VTO feature while shopping for lipstick, eyeliner, and eyeshadow in 2019, 2020, 2021, and 2022. A406–07 (Colosi Dep. Tr. 65:23–66:21). But Amazon's data reflect only a single use of a VTO feature from an Illinois-associated IP address involving the Modiface VTO Technology in

11

"model mode" in Illinois. *See* A417 (Pham Decl. ¶ 15). There is no record of Plaintiff Colosi ever using the Amazon VTO Technology in Illinois. A6.

Plaintiff Colosi currently resides in Georgia. A403 (Colosi Dep. Tr. 6:23–24). She previously resided in multiple locations outside Illinois, including Honduras and Florida. A403 (Colosi Dep. Tr. 7:1–8:16). Colosi testified that she used Amazon's VTO feature in "several locations" *outside of* Illinois. A408–09 (Colosi Dep. Tr. 71:24–72:9, 107:7–23).

Plaintiff Colosi could not recall the details of her use of VTO technology, including: (i) the year she first used it, A405 (Colosi Dep. Tr. 30:2–7); (ii) how many times she used it, A405–06 (Colosi Dep. Tr. 30:2–7, 65:17–22); (iii) her specific location on each date she used it, A408–09 (Colosi Dep. Tr. 71:15–72:9, 107:16–19); or (iv) what disclosures she received when she used it, A408 (Colosi Dep. Tr. 70:23–71:3).

## III. The Proceedings

Plaintiffs claim that when they used VTO features, Amazon collected and stored their biometric identifiers in violation of Sections 15(a) and 15(b) of BIPA. Despite their limited VTO usage, the district court approved Plaintiffs to represent a sweeping class of individuals who used different VTO features and technologies for different purposes. Amazon denies that any use of its VTO features resulted in any BIPA violations.

Following extensive briefing and a hearing, on March 30, 2024, Judge Alonso certified a class under Federal Rule of Civil Procedure 23(b)(3). A1–35. The class

comprises "all individuals who used a virtual try-on feature on Amazon's mobile website or app while in Illinois on or after September 7, 2016"—except for those who used the feature only in model mode or for hair color. A33. The district court acknowledged Amazon's argument that under Plaintiffs' view, tens of thousands of class members could each recover massive damages, ranging from tens of thousands to over a million dollars. A29. Even so, the district court held that a class action was superior to individual proceedings because of perceived economies of scale and the absence of any similar individual litigation initiated by class members. A29–32. The district court did not identify any other certified consumer class action involving comparably large potential individual recoveries.

The district court also acknowledged the limitations in Amazon's data. A20–23. But the district court held those limitations were not obstacles to class certification. Analyzing the issue principally as a question of class management and class member identification—not as a question of predominance—the district court concluded that "Illinois billing-addresses, IP addresses from which the VTO was used, and geo-location data identifying the region of the user based on the IP address will identify persons who used the VTOs while in Illinois, and claim-form affidavits can serve as an additional cross-check." A21; A24–25. The district court did not discuss the individual inquiries that would be necessary for shoppers claiming to be class members for which Amazon has no data showing VTO use in Illinois. Nor did the district court address: (i) whether, or how, conflicts among a user's various billing addresses, or conflicts between her billing address and her geolocation data, would

be resolved without individualized inquiry; (ii) whether, or how, class members could be expected reliably to recall—and thus accurately report on claim-form affidavits—their ***specific physical location*** on each date they used VTO technology since September 7, 2016; (iii) class members' strong financial motive to report they used VTO in Illinois, even when they had no reliable recollection of doing so; or (iv) the infringement of Amazon's due process rights if it could not test through discovery and cross-examination each class member's reported physical location for each VTO use.

The district court also acknowledged the Illinois Supreme Court's holding that statutory damages awards under BIPA are "discretionary rather than mandatory." A25. But the court held that this discretion was not an obstacle to class certification for two reasons: (1) the court could exercise discretion to reduce an excessive damage award on a classwide basis, as when courts reduce a class recovery to comply with due process limits; and (2) the individual defenses that Amazon contends should guide the discretionary analysis do not defeat predominance. A27–28.

After the district denied Amazon's timely motion for reconsideration, Amazon sought—and this Court granted—permission to appeal under Federal Rule of Civil Procedure 23(f). A36–37.

## SUMMARY OF ARGUMENT

The Court should reverse the district court's class certification order for three independent reasons. ***First***, Plaintiffs' damages theory would result in such sizable individual recoveries that a class action is not superior to individual actions as required by Rule 23(b)(3). Under Plaintiffs' theory, the average recovery for each class member would exceed ***$60,000***; over 1,400 class members would have individual

recoveries exceeding *$500,000*; and over 250 class members would have individual recoveries exceeding *$1,000,000*. A29. Class members could use VTO features a virtually limitless number of times daily, with minimal effort. Because these unusually large individual recoveries give each class member an overwhelming interest in individually controlling the prosecution of his or her claims, a class action is not a superior method of adjudication under Rule 23(b)(3). Individual actions also would protect Amazon's due process rights by enabling it to test, through traditional discovery techniques and cross-examination, whether individual class members in fact used VTO features in Illinois each time they say they did.

*Second*, class members' need to prove use of a VTO feature "while in Illinois" presents overwhelming individualized issues that defeat predominance and superiority under Rule 23(b)(3). There is no reliable classwide method to determine whether VTO features were accessed while the user was in Illinois (and thus arguably subject to BIPA) or outside of the state (and thus beyond BIPA's reach). Unlike many BIPA class actions in which class members were allegedly required to engage with a biometric capture technology at a fixed physical location in Illinois—as, for example, a condition of employment—VTO technology is both voluntary and mobile. The result is significant uncertainty surrounding which VTO features (if any) were accessed and, if so, where and by whom. Because Amazon's limited IP-address-based geolocation data have a high error rate, tens of thousands of individual hearings would be necessary to determine whether class members even potentially have valid

BIPA claims.  That destroys any theoretical efficiencies gained through the class action device.

      ***Third***, the need to prove discretionary damages also presents overwhelming individualized issues that defeat predominance and superiority under Rule 23(b)(3). Statutory damages under BIPA are discretionary.  Though the Illinois Supreme Court has not identified the specific considerations informing the exercise of that discretion, discretionary damage awards often turn on individual considerations. That is especially the case here, where VTO features were optional and there is no allegation of any actual harm ***at all***.  That means the individual circumstances of each class member's use of a VTO feature must be evaluated against Amazon's conduct to determine whether, and what amount, of statutory damages is appropriate.  Plaintiffs have offered no feasible plan that would enable a factfinder to exercise its discretion in that manner without abridging Amazon's substantive and constitutional rights, in violation of the Rules Enabling Act.

## ARGUMENT

The class action is the "exception," not the rule. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23 does not "establish an entitlement to class proceedings for the vindication of statutory rights"; it "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 229, 234 (2013). Rule 23's requirements are most stringent when the plaintiff seeks to certify a class seeking damages. Such a class cannot be certified without satisfying all four of Rule 23(a)'s requirements (numerosity, commonality, typicality, and adequacy) ***and*** Rule 23(b)(3)'s predominance and superiority requirements. Fed. R. Civ. P. 23(a)–(b). A plaintiff must "actually ***prove***—not simply plead—that [her] proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original).

Before taking the extraordinary measure of class certification, district courts must conduct a "rigorous analysis" of the claims, issues, and evidence to determine whether the plaintiffs "satisf[ied] through evidentiary proof" their burden under Rule 23. *Comcast*, 569 U.S. at 33; *accord Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *see Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 895 (7th Cir. 2024) ("Plaintiffs bear the burden of demonstrating that they meet Rule 23's certification requirements by a preponderance of the evidence."). This Court reviews a district court's grant of class certification for abuse of discretion, such as "when a district court commits legal error or makes clearly erroneous factual findings." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015).

## I.     Plaintiffs' Damages Theory Undermines The Superiority Of The Class Action Device.

### A.     The Availability Of Significant Individual Damages Under BIPA Defeats Superiority.

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).  Consistent with that policy, this Court has explained that class actions are superior to ordinary litigation when "only a lunatic or a fanatic" would pursue a claim solo.  *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *see Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (finding class action superior when "few members of such a class, considering the costs and distraction of litigation, would think so meager a prospect made suing worthwhile").  Other circuits agree that the class action device is warranted "when an individual might forgo pressing a free-standing claim because she has too little at stake on her own." *E.g.*, *J.D. v. Azar*, 925 F.3d 1291, 1314 (D.C. Cir. 2019); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) ("the 'risks, small recovery, and relatively high costs of litigation" are "at the heart of why the Federal Rules of Civil Procedure allow class actions"); *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 491–92 (3d Cir. 2015) (class actions provide "an indispensable mechanism for aggregating claims when the individual stake is low and the similarity of the challenged conduct is high"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain

relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."); *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) (class action superior when "proceeding individually would be prohibitive for class members with small claims").

Conversely, when the potential relief is substantial enough to incentivize individual proceedings, ordinary litigation is superior to a class action. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) (finding "[t]he most compelling rationale for finding superiority in a class action—the existence of a negative value suit—is missing" because "individual damage claims are high" and "the prevailing party may recover attorneys' fees"). In *Andrews v. Chevy Chase Bank*, for example, the Court reversed class certification where the "typical" class member stood "to receive over $50,000, plus attorneys' fees and costs." 545 F.3d 570, 577–78 (7th Cir. 2008). The prospect of such significant recovery refuted the plaintiffs' claim that class litigation was superior. *Id.* at 577. Sizeable damages awards, plus fees and costs, are "not the sort of remedy that would not otherwise be sought unless the class-action mechanism were available." *Id.* at 577–78. *Accord Glover v. Standard Fed. Bank*, 283 F.3d 953, 965 (8th Cir. 2002) (explaining that a statute allowing for recovery of attorneys' fees and costs "permits and encourages individual consumers to raise valid … claims," so "a class action is not necessary for justice to be done").

The same is true here. Under Plaintiffs' theory, over half of the class members would recover at least ***$30,000 each***, over 50,000 class members would recover at

least *$50,000 each*, nearly 25,000 class members would recover at least *$100,000 each*, over 1,400 class members' individual recoveries would exceed *$500,000 each*, and over 250 class members' individual recoveries would exceed *$1,000,000 each*. A417 (Pham Decl. ¶ 12). The average recovery for each class member, in Plaintiffs' view, exceeds *$60,000*. A417 (Pham Decl. ¶ 13).

Further, these sums are based on VTO usage data collected in September 2023, so class members' potential recoveries are substantially higher today and will continue to balloon with the passage of time. And just as in *Andrews*, on top of available statutory damages, a class member that prevails in an individual BIPA lawsuit may recover "reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses." 740 ILCS 14/20(a)(3).

Amazon is aware of no other consumer class action that has ever been certified where the potential recoveries for individual class members were so significant. On the contrary, superiority is often found lacking based on comparable, or even far smaller, potential recoveries. *See, e.g.*, *Zinser v. Accufix Rsch. Inst.*, 253 F.3d 1180, 1190–91 (9th Cir. 2001) (minimum damages of $50,000 "does not argue persuasively for class certification" or suggest each member lacks an interest in "individually controlling the prosecution or defense of separate actions"); *cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (minimum recovery of $7,500 plus fees "sufficient to provide incentive for the individual prosecution of meritorious claims").

More than most other claims, consumer claims under BIPA are particularly well suited to encourage individual actions. Under BIPA, statutory damages are

available up to $1,000 (or potentially even $5,000) per claim. *See* 740 ILCS 14/20(a)(2). The statute's private right of action does not require actual damages. *See Rosenbach*, 2019 IL 123186, ¶ 36, 129 N.E.3d at 1206–07. And a separate claim accrues "with every scan" of biometric data until the informed written consent required by BIPA is secured. *Cothron*, 2023 IL 128004, ¶ 45, 216 N.E.3d at 929. Finally, a prevailing plaintiff may recover her "reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses." 740 ILCS 14/20(a)(3).

While consumer claims under BIPA are particularly ripe for individual litigation, the specifics of Amazon's VTO features make the incentive for individual litigation especially strong. Amazon's VTO features cause no actual harm. Indeed, they are an optional technology that Amazon offers for the convenience and amusement of shoppers. It can be used repeatedly with minimal effort and without any cost. Plaintiffs Colosi and Svoboda do not contend they suffered any actual injury or seek any actual damages. A113 (Am. Compl. Prayer for Relief) (seeking statutory damages only, not actual damages). Yet under Plaintiffs' view, each such use—which may be dozens or hundreds of times ***daily***—potentially triggers thousands of dollars in damages. This circumstance precludes a finding of superiority and defeats class certification.

The district court dismissed the significance of these massive potential individual damages, citing this Court's decision in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006). *See* A29–30. But *Murray* does not sweep nearly so broadly. The plaintiffs there alleged that a creditor accessed class members' credit

histories in violation of the Fair Credit Reporting Act. *Murray*, 434 F.3d at 950. But unlike this case, there was no indication that class members had any incentive to pursue their claims individually. The damages potentially available to each individual, ranging from $100 to $1,000, *id.* at 951, did not remotely approach the tens of thousands of dollars, hundreds of thousands of dollars, or millions of dollars potentially recoverable here. Nor were statutory damages tied to class members' individual decisions to use the defendant's service. Thus, unlike in this case, there was no indication that class members could freely generate additional claims for up to $5,000 each with the click of a button.

### B. The Availability Of Significant Classwide Damages Under BIPA Raises Due Process Concerns And Defeats Superiority.

Apart from the ample incentive for individual litigation, the massive classwide damages that would result without any real harm further preclude class certification. Class actions are not superior where the defendant's "potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003); *see Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234 (9th Cir. 1974) (denying certification where the $750 million sought was "staggering" in comparison to the alleged harm).

Here, class members cannot plausibly claim any actual privacy intrusion. Shoppers' facial data never leave their personal device, are never transmitted to or stored by Amazon, and are promptly deleted from users' devices as soon as they close the VTO session. A308; A315. What's more, Amazon discloses before shoppers use the VTO technology that the camera on their device will be used to virtually render

products on an image of their face, and that their facial data never leave their device. A308; A315. Even if some small fraction of the class had some colorable privacy concern, individual litigation would be the superior way to resolve it. *See Frahm v. Equitable Life Assurance Soc'y of the U.S.*, 137 F.3d 955, 957 (7th Cir. 1998) ("Individual rather than class litigation is the best way to resolve person-specific contentions when the stakes are large enough to justify individual suits."). But despite the absence of any real harm to class members, Plaintiffs seek to aggregate **billions of dollars** of statutory damages in a single BIPA class action.

Consolidating claims in this manner raises serious due process concerns. *Parker v. Time Warner Ent. Co.*, 331 F.3d 13, 22 (2d Cir. 2003). Certification of such a class would "expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages— yet ones that are awarded as a matter of strict liability, rather than for the egregious conduct typically necessary to support punitive damages award." *Id.* at 21–22; *see also Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1121 (9th Cir. 2022) ("[C]ourts in this and other circuits have grappled with the constitutionality of statutory damages awards challenged in the aggregate where the award is unusually high because of either the large number of violations at issue in a single dispute or, most relevant to this case, the aggregation of damages in class action litigation.").

Those due process concerns are heightened—and further weigh against a finding of superiority—when, as here, certification would deny the defendant the ability to test class members' say-so regarding the elements of their claims. As

discussed further below, an essential element of the BIPA claims here is the individual's use of VTO in Illinois. And the district court held that claim-form affidavits are a reliable means to determine a shopper's physical location each time they claim to have used a VTO feature in Illinois since September 7, 2016. *See infra* Arg. II.B; A21. But BIPA's statutory damages give class members a powerful incentive to overreport their use of VTO features in Illinois, regardless of their actual recollection. Not even Plaintiffs, despite their eagerness to serve as class representatives, could recall where, when, or how many times they used VTO features in Illinois—even after preparing for their sworn depositions with counsel's assistance. *See supra* Stmt. of the Case II.C. At least for Plaintiffs' individual claims, Amazon can use discovery devices (like interrogatories, document requests, and depositions) and cross-examine Plaintiffs at trial. For the remaining 160,000-plus class members, however, Amazon will have no such opportunity. It is not due process to force Amazon to defend against multibillion-dollar class claims with its hands tied behind its back. The district court should have avoided this constitutional infirmity by recognizing that class litigation is not superior. *See Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 278 (4th Cir. 2010) (Wilkinson, J., concurring); *see also In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299–1300 (7th Cir. 1995) (potentially devastating classwide liability "need not be tolerated when the alternative exists of submitting an issue to multiple juries").

Simply put, the district court committed legal error and thus abused its discretion when it failed to recognize that superiority is destroyed by the magnitude

of class members' individual recoveries under Plaintiffs' theory of the case, as well as the constraints that certification places on Amazon's ability to test the accuracy of absent class members' individual claims forms.

## C. The District Court's Other Errors Preclude Superiority.

The district court also accepted Plaintiffs' assertions that they had "expended substantial expert costs in the six figures to analyze Amazon's software, with fact and expert discovery then-ongoing," and that no individual BIPA lawsuits had been filed based on the use of a VTO feature. A30. Neither fact satisfies Plaintiffs' burden to prove superiority.

For starters, successful BIPA plaintiffs can recover their expert costs, so the need to hire experts is no barrier to plaintiffs successfully bringing individual BIPA suits. *See* 740 ILCS 14/20(a)(3).

Nor does the paucity of individual BIPA cases challenging Amazon's VTO features establish that bringing individual cases is economically unviable. The more plausible explanation is that other plaintiffs' counsel have identified the same flaws in Plaintiffs' BIPA claims that Amazon has pointed out—including that Amazon does not collect "biometric identifiers" or "biometric information"—and concluded that such claims are likely to fail on their merits. Amazon's customers also have no reason to bring such claims because they suffered no actual injury from using the VTO features for their convenience or amusement at no cost, particularly given their facial data never leaves their personal devices. But if they did perceive some wrongdoing

by Amazon, the potential monetary recovery available under BIPA provides ample financial incentive to bring an individual suit.

## II. Individualized Questions Concerning Use Of VTO Features "While In Illinois" Defeat Predominance And Superiority.

Plaintiffs also cannot satisfy Rule 23(b)(3)'s predominance or superiority requirements because a threshold liability question—whether a given class member used a VTO feature while in Illinois—presents overwhelmingly individual issues.

The predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member; a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, classwide proof." *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843–44 (7th Cir. 2022).

Rule 23(b)(3)'s predominance requirement is satisfied when "key issue[s]" in the case are "susceptible to generalized, classwide proof." *Id.*; *see Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ("a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication"). The identification of key issues "begins with the elements of the underlying claim," *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 607 (7th Cir. 2021), but extends also to affirmative defenses, *Gorss Motels*, 29 F.4th at 845. Though the presence of individual questions does not necessarily defeat predominance,

common questions must be weighed against "*any* questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (emphasis added).

Where fundamental questions of liability and damages are overwhelmingly individualized, class certification "only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies," and it becomes "hard to see how common issues predominate or how a class action would be the superior means to adjudicate the claims." *Andrews*, 545 F.3d at 577–78; *see, e.g.*, *Riffey v. Rauner*, 910 F.3d 314, 319 (7th Cir. 2018) (affirming denial of certification where "the question whether damages are owed for many, if not most, of the proposed class members can be resolved only after a highly individualized inquiry").

Here, VTO use *while in Illinois* is an essential element of every class member's BIPA claim because BIPA does not apply extraterritorially. Under Illinois law, a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). None of BIPA's express provisions indicates that the statute was intended to have extraterritorial effect. And every court to consider the question has held that BIPA does not apply extraterritorially. *See, e.g.*, *Vance v. Amazon.com, Inc.*, 2022 WL 12306231, at \*6–8 (W.D. Wash. 2022) ("BIPA … does not apply extraterritorially to conduct outside of Illinois."); *Vance v. Microsoft Corp.*, 2022 WL 9983979, at \*6–8 (W.D. Wash. 2022) (same); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) ("[The plaintiffs'] asserted violations of [BIPA] must have taken place in Illinois in order for them to win."); *Monroy v. Shutterfly, Inc.*,

2017 WL 4099846, at *5 (N.D. Ill. 2017) ("BIPA does not apply extraterritorially."). It is therefore undisputed that BIPA violations must occur in Illinois for a claimant to obtain any relief.

The district court certified the class because it believed that (1) Amazon's data "will identify persons who used the VTOs while in Illinois," and (2) "claim-form affidavits can serve as an additional cross-check." A21. As explained more fully below, the district court was wrong on both counts. Neither Amazon's data nor claim-form affidavits enable class litigation here consistent with the predominance and superiority requirements of Rule 23(b)(3), the Rules Enabling Act, and the U.S. Constitution.

## A. Amazon's Data Cannot Solve The Problems Arising From Plaintiffs' Need To Prove VTO Use "While In Illinois."

Plaintiffs cannot show that this essential prerequisite for liability—use of VTO *while in Illinois*—is capable of classwide resolution through common proof. For an unknown percentage of the class—including (1) anyone who used a VTO feature while not logged into an Amazon account, (2) anyone who used the Modiface VTO Technology but did not add an item to their shopping cart, and (3) anyone who used a VTO feature on someone else's Amazon account (such as a friend or family member)—there are no data of VTO use whatsoever, much less data capable of resolving this "issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As a result, the only way to prove BIPA liability and damages will be through individualized proof.

Plaintiffs' individual circumstances illustrate this problem. Amazon has no data indicating that either Plaintiff used a VTO feature in Illinois other than in "model" mode, which is irrelevant to this case because it does not involve Plaintiffs' faces or biometric identifiers *at all*. The sole basis for any determination that Plaintiffs used a relevant VTO feature in Illinois thus comes from their testimony that they did so. That is the epitome of an individual question that cannot be resolved on a classwide basis.

Even where Amazon has data of VTO use—*i.e.*, data of those shoppers who used the Amazon VTO Technology while logged into an Amazon account or who used the Modiface VTO Technology while logged into an Amazon account and added an item to their shopping cart—Amazon's IP-address-based geolocation data cannot reliably identify VTO use in Illinois. The district court dismissed this formidable obstacle to class certification because "Illinois billing addresses, IP addresses from which the VTO was used, and geo-location data identifying the region of the user based on the IP address" would supposedly "identify persons who used the VTOs while in Illinois, and claim-form affidavits [could] serve as an additional cross-check." A21. But the purportedly common data identified do not reliably identify the state in which the use took place.

To begin with, billing addresses are based off the primary payment method associated with the account. That payment method could belong to a third party or be outdated, and a shopper's billing address gives no indication of *where* that shopper used the mobile VTO technology at issue. Indeed, a user's current billing address

says nothing about their specific physical location on the date of VTO use, which may be years earlier. And a shopper's historical billing address—for example, the billing address derived from a television purchase made on Amazon in 2020—does not indicate a specific physical location on the date of purported VTO use, which may be years later. Plaintiff Colosi, for example, currently resides in Sandy Springs, Georgia, and previously resided in multiple locations outside Illinois, including Tegucigalpa, Honduras, and Orlando and Miami, Florida. A403 (Colosi Dep. Tr. 6:23–24, 7:1–8:16). She testified that she used Amazon's VTO features in "several locations" outside Illinois. A408–09 (Colosi Dep. Tr. 71:24–72:9, 107:7–23).

Plaintiffs themselves acknowledge the inadequacies of—and numerous conflicts among—a user's various billing addresses. After class certification, Plaintiffs admitted that "some unknown percentage" of shoppers have multiple billing addresses that "are different than their billing addresses on the date(s) that they used the VTO." D. Ct. ECF No. 345 at 8. According to Plaintiffs, that a secondary billing address will "in many instances" be "different than the default address" gives rise to "a spectrum" of possible individual showings as to the BIPA territoriality requirement: on one end of the spectrum is a shopper with "all Illinois billing addresses," and on the other end of the spectrum is a shopper with *no* Illinois billing addresses. *Id.* "[W]here on that spectrum the class member's billing-address data falls goes to the ***weight of it as evidence*** that a contemporaneous VTO use was 'while in Illinois.'" *Id.* Resolving these "***countless different billing address permutations***" (as Plaintiffs describe them), and parsing the appropriate "weight"

to assign each competing piece of evidence, will require individual trials. *Id.* (emphasis added). For these reasons, class members' billing addresses do not provide a common method of establishing domicile in Illinois, much less physical presence in Illinois on the date of VTO use on a mobile device. *Cf. In re Sprint Nextel Corp.*, 593 F.3d 669, 674 (7th Cir. 2010) ("Ultimately, we agree with the majority of district courts that a court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses.").

Similarly, IP addresses and the geolocation data derived from them do not correspond to state lines and cannot reliably establish whether the use occurred in Illinois or a neighboring state. The third-party service provider Amazon uses for location approximation is only 74% accurate for identifying whether an IP address is within 100 kilometers of a given U.S. city[3], while some recorded uses of the Modiface VTO Feature have less than 85% confidence that it has accurately identified the shopper's state. That classwide IP-address-based geolocation data are wrong up to 45% of the time (*see supra* n.3)—and that there is no way to decipher *in which instances* it is wrong—means that, as a practical matter, individualized inquiry will be necessary for *all* uses of VTO by *all* class members. The individualized inquiries required to ascertain each individual's physical locations each time he or she used a

---

[3] Other evidence suggests that the third-party service's location approximations are *only 55% accurate*—little better than a coin flip. *See* GeoIP® accuracy comparison for locations worldwide, MAXMIND (2025)*,* https://www.maxmind.com/en/geoip-accuracy-comparison?country=US&resolution=100&connection_type=only_cellular&ip_family=ipv4_only#results (last accessed Apr. 14, 2025).

VTO feature would swamp any common issues. And as discussed further below, relying on users' claim-form affidavits presents an untenable solution.

Compounding these obstacles, Plaintiffs themselves assert that even geolocation data within a single VTO session by the same user separated by ***mere minutes*** may conflict and indicate that the VTO session took place in different locations. D. Ct. ECF No. 345 at 6. Plaintiffs further stress that "***countless permutations*** are possible" along a spectrum, where "one end is all geolocation records for the VTO session reflecting Illinois," and the "other end is no records reflecting Illinois." *Id*. (emphasis added). Plaintiffs concede individualized mini-trials will be necessary to determine the appropriate "weight" to assign all this competing evidence and resolve the inevitable conflicts. *See id*. ("The place on the spectrum a given VTO session falls ***goes to the weight*** of the geolocation evidence that the particular VTO use was 'while in Illinois'" (emphasis added)). And the asserted variability of shoppers' geolocation data from one minute to the next during even a single VTO session further underscores the unreliability of shopper's IP-address-based geolocation data as a proxy for physical location on the date of VTO use.

Plaintiffs' litigation position also balloons the number and complexity of required individual mini-trials in additional ways. According to Plaintiffs, a shopper should be deemed to have used VTO in Illinois—and thus satisfied the applicable territorial requirement—***even if*** her IP-address-based geolocation data indicate she used VTO technology ***outside*** of Illinois, or her IP-address-based geolocation data

and billing address data **conflict**.  *See* D. Ct. ECF No. 385 at 2 (stating that the Court's class certification ruling "doesn't contemplate all data points must indicate Illinois for a person to be in the class").  For example, in Plaintiffs' view, Plaintiff Colosi used VTO in Illinois—even though geolocation data did not indicate **any** VTO use in Illinois—because "her Illinois billing address and testimony" supposedly indicated "she used VTO in Illinois."  *Id*.  Hence, a highly individualized inquiry will be needed to reconcile conflicts in Plaintiffs' proffered classwide proof.  And because Plaintiffs' position is that "all billing address data stands on equal footing with the geolocation data," D. Ct. ECF 345 at 7, no simple rule or methodology exists to resolve those inevitable conflicts.  Instead, a highly individualized inquiry, carefully assessing each piece of conflicting evidence and determining its corresponding weight, would be necessary to resolve the potentially limitless scenarios in which conflicts might arise.

In this respect, the certified class is unlike BIPA class actions predicated on the capture of biometric identifiers at places of employment within Illinois.  In those cases, BIPA's extraterritoriality requirement does not give rise to these same individual issues or predominance problems because all class members used the technology at issue at a fixed location in Illinois.  Here, by contrast, the VTO features are optional, mobile technologies that shoppers elect to use when and where they choose.

**B.    Claim-Form Affidavits Cannot Solve The Problems Arising From Plaintiffs' Need To Prove VTO Use "While In Illinois."**

The sole solution the district court and Plaintiffs proposed to this obstacle is no solution at all: an individualized inquiry into each class member's dubious reporting on their claim-form about their physical location on each date they say they used a VTO feature, including ***uses several years ago***. *See* A21 ("claim-form affidavits can serve as an additional cross-check").  Given the inherent difficulty of this recollective exercise following the substantial passage of time (particularly for shoppers who used a VTO feature hundreds or thousands of times), the lofty potential recoveries (which for some individuals may exceed $1 million, *see supra* Arg. I), and Amazon's inability to cross-examine each class member on any self-serving statements contained in her claims form, the risk of abuse—and the corresponding impingement of Amazon's due process rights—is great.

Plaintiff Colosi's inability to recall virtually anything about her VTO use underscores this peril.  Even after preparation with counsel and reviewing relevant documents, Plaintiff Colosi had no recollection at her deposition of: (i) the year she first used it, A405 (Colosi Dep. Tr. 30:2–7); (ii) how many times she used it, A405–06 (Colosi Dep. Tr. 30:2–7, 65:17–22); (iii) her specific location on each date she used it, A408–09 (Colosi Dep. Tr. 71:15–72:9, 107:16–19); or (iv) what disclosures she received when she used it, A408 (Colosi Dep. Tr. 70:23–71:3).  The district court's supposition that most or all class members would be able to accurately report on claim-form affidavits their specific physical location on each date they used VTO during the

nearly decade-long class period, therefore, not only defies common sense but also is empirically wrong.

Claim-form affidavits present individual issues that would require potentially hundreds of thousands of individual mini-hearings to resolve. And to make matters worse, the district court did not elaborate on the "creative solutions" purportedly available, and the only "solutions" it sketched—i.e., using claim-form affidavits as a "cross-check"—create serious due process problems by depriving Amazon of its right to challenge that individualized evidence. Under the Rules Enabling Act, the district court cannot strip Amazon of its constitutional right to defend against any individual class member's allegations merely because claims are joined through Rule 23. *See Dukes*, 564 U.S. at 367 ("Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims." (citations omitted)). To afford Amazon adequate process— through a procedure consistent with *Dukes*, the Rules Enabling Act, and the Seventh Amendment—would require hundreds of thousands of mini-trials in which individualized issues would predominate.

The district court relied heavily on *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), and *Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018), but those cases presented radically different circumstances. *Mullins* involved "low-value claims" that "only a lunatic or a fanatic" would litigate individually. 795 F.3d at 665 (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

And in *Beaton*, "the amount of damages to which each plaintiff would be entitled [was] so small that no one would bring this suit without the option of a class," 907 F.3d at 1030. Further, this Court has distinguished those cases where, as here, class action plaintiffs invoked them to justify the use of class members' affidavits "not to clean up individual questions left over after some other, common question has been decided, but to provide individual proof for the same question that [supposedly] can be resolved through common proof." *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1010 (7th Cir. 2019).

Moreover, *Mullins* addressed the "ascertainability" and "manageability" requirements of Rule 23—not its predominance requirement. *Mullins*, 795 F.3d at 659, 664. It did not address the situation here, where the individualized inquiries necessary to resolve Amazon's liability to each individual class member would swamp any common issues presented.

If anything, *Mullins* confirms why class certification is inappropriate here. *Mullins* stressed the risk of "fraudulent or mistaken" claims. *Mullins*, 795 F.3d at 667. While *Mullins* dismissed that risk as low in "the typical low-value consumer class action" where "the expected recovery is so small that we question whether many people would be willing to sign affidavits under penalty of perjury saying that they purchased the good or service," that risk is much greater here. *Id.* (discussing claim worth $70). Amazon does not have data for many instances of alleged VTO use and thus nothing prevents members of the public from fabricating their VTO usage and physical location for hundreds of thousands or even millions of dollars. Denying

Amazon a meaningful opportunity to test those claims through discovery and cross-examination would plainly violate Amazon's due process rights.

*Beaton* is also distinguishable. In *Beaton*, this Court determined that "it will be easy" to determine whether the essential elements of each individual's claim are met. *Beaton*, 907 F.3d at 1029. Here, by contrast, no reliable means exists to determine whether a shopper was in Illinois each time she used a VTO feature, a prerequisite for BIPA liability. And while *Beaton* deemed affidavits sufficient to resolve any residual individualized inquiries, that device fails here for the reasons discussed above. *Id*. at 1030. Finally, *Beaton* stressed that a class action was a "crucial deterrent" against highly injurious conduct—the "proliferation of bogus products." *Id*. at 1031. Here, by contrast, class members suffered **no injury** to begin with. *See supra* p. 21.

The district court also relied on *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018). But *Facebook* is inapposite because it addressed an extraterritoriality issue that is irrelevant here. In *Facebook*, the court held that the location of Facebook's servers was only one factor to consider in a BIPA extraterritoriality analysis. *Id*. at 548. Whether right or wrong, that analysis has no application here because the district court in this case certified a class expressly limited to individuals who used VTO features "while in Illinois." A33. *Cf. Facebook*, 326 F.R.D. at 541 (defining class to include Facebook users "**living** in Illinois") (emphasis added). Unlike in *Facebook*, in this case the location of VTO usage is essential **both** to liability and membership in the class.

The district court analyzed the need to prove VTO use "while in Illinois" principally as one of manageability, focusing on the question of whether sufficient data exist from which class members can be identified. *See* A20–25. But that framing conflates class member identification with the substantive requirements for a class member to recover under BIPA. What may suffice to identify class members— satisfying Rule 23's ascertainability—will not necessarily show that common issues predominate or that a class action is superior. Because individual questions predominate over common ones, the district court abused its discretion in certifying a class here.

## III. Individualized Questions Concerning Discretionary Damages Defeat Predominance And Superiority.

When individual questions central to the determination of damages overwhelm common questions, that defeats predominance and precludes class certification. *See Comcast*, 569 U.S. at 34 (decertifying a class where "questions of individual damage calculations will inevitably overwhelm questions common to the class"). Here, Amazon has individual defenses as to every member of the certified class that defeat predominance and preclude class certification because damages are "discretionary rather than mandatory" under BIPA. *Cothron*, 2023 IL 128004, ¶ 42, 216 N.E.3d at 929.

As the Illinois Supreme Court has noted, BIPA provides that a prevailing party "***may*** recover" damages of $1,000 for negligent violations or $5,000 for intentional and reckless violations, but it does not provide that a prevailing party ***shall*** recover those sums. *Id.* (citing 740 ILCS 14/20). This discretionary regime for statutory

damages is what "the General Assembly chose." *Id.* It is especially important when a prevailing party asserts multiple violations, as cumulative damages could prove exorbitant, and "there is no language in the Act suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business." *Id.*

Other than recognizing that there is "no language" in BIPA "suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business," *id.*, the Illinois Supreme Court has not yet provided guidance on the discretionary factors relevant to ascertaining the availability of statutory damages under BIPA. But there is every reason to believe that those factors will present individual questions in this case. This is not a situation in which claimants may have a common experience of feeling compelled to engage with a biometric capture technology, such as the use of a biometric technology as a condition of employment, or a situation in which the technology was used in a similar manner across all members of the putative class. *Cf. Tapia-Rendon v. United Tape & Finishing Co.*, 2023 WL 5228178, at *6 (N.D. Ill. 2023) (certifying a class of biometric timeclock users where "there is a reasonable likelihood a standardized per-scan [damage amount] will almost certainly be established and applied consistently across the class"). The district court's reliance on cases addressing that disparate situation was therefore misplaced. *See* A26.

Rather, Amazon's VTO features were ***entirely optional***. They were made available as a convenience for shoppers to be able to preview a product before

purchasing it. Shoppers who did not want to use Amazon's VTO features did not have to do so. They could decide whether to purchase eyewear or cosmetics products from Amazon without ever using a VTO feature. They also could have purchased eyewear or cosmetics products from a retailer other than Amazon. And if they ultimately chose to use a VTO feature, they were able to use it as little or as much as they wanted; there was no cost or burden associated with using a VTO feature. Unsurprisingly, shoppers' use of VTO features varied widely among class members. Some shoppers used VTO features only a handful of times; others used it more than a thousand times. *See* A417 (Pham Decl. ¶¶ 12–13).

These characteristics of the at-issue VTO features give rise to important affirmative defenses. Failure to mitigate, for example, could apply to an individual class member who made a conscious decision to use an Amazon VTO feature repeatedly in order to inflate and multiply her statutory damages. *See* A441–43. Likewise, consent, estoppel, and waiver may apply to individual class members who understood the nature of Amazon's VTO features, including based on their personal experience and understanding of similar technologies, and decided to continue using them anyway. *Id.*

Plaintiffs' individual experiences illustrate this point. Plaintiff Svoboda for example, admitted she voluntarily granted Amazon access to her camera and voluntarily uploaded photos to VTO. A396 (Svoboda Dep. Tr. 99:24–100:7). She continues to be a "daily" user of various social media applications, including several photo and video based applications such as Instagram and TikTok, and she does not

allege that she had any actual injury in the form of identity theft, emotional distress, or other harm; she strictly seeks statutory damages. A392 (Svoboda Dep. Tr. 30:5–32:7); A110–13. Taken together, those considerations weigh against the imposition of statutory damages at the upper end of the damages range.

This Court's "Pattern Jury Instructions for Statutory Damages" in the copyright context provide helpful insight into the individualized exercise of discretion required to determine statutory damages here. The Copyright Act provides generally that statutory damages must be "not less than $750 or more than $30,000," and, like BIPA, does not specify a list of factors to consider in determining the amount of statutory damages to award. 17 U.S.C. § 504(c)(1). But over time, various decisions have identified factors to be considered, including factors focusing on the plaintiff's situation (such the circumstances of the violation, the difficulty of proving the plaintiff's actual damages, and the revenues that the plaintiff lost because of the violation) and the defendant's situation (such as the defendant's profits and avoided expenses resulting from the violation, the defendant's intent, and the deterrence of future violations). *See* 7th Cir. Pattern Civil Jury Instructions § 12.8.4 (2017).[4]

---

[4] Other statutes providing for discretionary (rather than mandatory) statutory damages require similarly individualized inquiries to determine whether to award statutory damages. *See, e.g.*, *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016) (under the Electronic Communications Privacy Act, discretionary statutory damages turn on "the severity of the violation," whether the plaintiff suffered any "actual damage," and "the extent of any intrusion into the plaintiff's privacy"); Final Jury Instructions, *Krakauer v. Dish Network LLC*, No. 1:14-cv-333, ECF No. 293 at 13 (M.D.N.C. Jan. 19, 2017) (under the Telephone Consumer Protection Act, discretionary statutory damages turn on the "severity or minimal nature of the violation" and "the nature of the privacy invasion"); *Williams v. Country*

41

Applying similar considerations here, it would be impossible to determine statutory damages on a classwide basis through common proof. The circumstances of the violation often vary drastically depending on each shopper's situation: Why did the shopper use a VTO feature? Was there a single use, a handful of uses, or some extraordinary number of uses that make statutory damages cumulative and unwarranted? What did the shopper understand about VTO features when using them? And did she continue to use VTO features even after purportedly discovering her biometric data was captured? Each of these factors bears on both the applicability of affirmative defenses and whether a trier of fact would determine that statutory remedies are warranted. *See Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1042 (N.D. Ill. 2023) (vacating an award of damages under BIPA and ordering jury trial to determine discretionary damages in response to *Cothron*).

Moreover, the need to balance both plaintiff-focused and defendant-focused factors means that a single factfinder must apprehend all the facts in order to properly exercise discretion. Any jury deciding how much to award in statutory damages must receive and be aware of all evidence in the case bearing on factors relevant to that determination. That means defendant-focused factors cannot be tried to one jury and then plaintiff-focused factors tried separately to another jury, much less relegated to a claims-administration process. *See Eddlemon v. Bradley*

---

*Mut. Ins. Co.*, 2015 WL 9463801, at *9 (Ill. App. Ct. 2015) (under section 155 of the Illinois Insurance Code, discretionary statutory damages turn on "the totality of the circumstances"); 740 ILCS 190/25(a)(1)(B) (under the Illinois Civil Remedies Act, discretionary statutory damages turn on considerations that include "other exacerbating or mitigating factors").

*Univ.*, 65 F.4th 335, 339–40 (7th Cir. 2023) (rejecting the district court's attempt to defer the issue of individualized damages consideration with a naked assertion that it could later "fashion an appropriate formula for damages" because predominance "requires more than a tally of common questions; the district court must consider their relative importance").

This problem goes much further than the mere need for "individual damages determinations." *Mullins*, 795 F.3d at 671. It goes to the heart of whether Rule 23(b)(3) is satisfied. "If the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how common issues predominate or how a class action would be the superior means to adjudicate the claims." *Andrews*, 545 F.3d at 577. That is precisely the problem in this case. Plaintiffs have never grappled with this issue or offered a plan for trying these issues, consistent with the law and Amazon's due process rights.

These considerations are not "peculiar to *some* individual class members," such that a handful of outliers can be addressed after damages are resolved for most of the class. *Tyson Foods*, 577 U.S. at 453 (emphasis added). They are inherent in the exercise of discretion that BIPA affords to determine damages. The wide variability of use among class members requires individualized consideration to assess the appropriate damages for each class member. These considerations overwhelm common questions and defeat predominance. They also render a class action inferior, as any attempt to exercise discretion in awarding damages on a

classwide basis must consider individualized issues and thus would be unmanageable.

## CONCLUSION

The district court's order certifying the class should be reversed.


Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Dated: April 14, 2025

s/ Elizbeth B. Herrington
Elizabeth B. Herrington
  *Counsel of Record*
Alborz Hassani
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
312.324.1000
beth.herrington@morganlewis.com
al.hassani@morganlewis.com

Ari Micah Selman
101 Park Avenue
New York, NY 10178
212.309.6000
ari.selman@morganlewis.com

Stephanie Schuster
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
202.739.3000
stephanie.schuster@morganlewis.com

Matthew D. Klayman
2222 Market Street
Philadelphia, PA 19103
215.963.5000
matthew.klayman@morganlewis.com

*Counsel for Defendants-Appellants*

## CERTIFICATES OF COMPLIANCE

1. This brief complies with the type–volume limitation of Fed. R. App. P. 32(a)(7)(B) as modified by Circuit Rule 32(c). This brief contains 11,008 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) as modified by Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 12–point Century Schoolbook font.

Dated: April 14, 2025                    *s/ Elizabeth B. Herrington*
                                          ELIZABETH B. HERRINGTON

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025, I caused the foregoing to be electronically filed with the Clerk of the U.S. Court of Appeals for the Seventh Circuit by using the Court's appellate CM/ECF system.

Dated: April 14, 2025

*s/ Elizabeth B. Herrington*
ELIZABETH B. HERRINGTON

## CIRCUIT RULE 30(d) STATEMENT

I hereby certify that all of the materials required by Fed. R. App. P. 30(a)(1) and Circuit Rule 30(a) and (b) are included in Defendants-Appellants' Separate Appendix or are included in the Short Appendix bound with the Opening Brief of Defendants-Appellants.

Dated: April 14, 2025                    *s/ Elizabeth B. Herrington*
                                         Elizabeth B. Herrington

# TABLE OF CONTENTS

## Required Short Appendix

District Court's Opinion & Order Granting Plaintiffs' Motion
for Class Certification, D. Ct. ECF No. 291 (Mar. 30, 2024) ........................A1

Order denying Defendants' Motion for Reconsideration,
D. Ct. ECF No. 365 (Jan. 6, 2025) .................................................................A36

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TANYA N. SVOBODA, *et al.*,　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　　)　　　No. 21 C 5336
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　　Judge Jorge L. Alonso
AMAZON.COM, INC., *et al.*,　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　)

## <u>MEMORANDUM OPINION AND ORDER</u>

For the reasons that follow, Plaintiff's Motion for Class Certification is granted.

## <u>BACKGROUND</u>

Plaintiffs filed an amended complaint, in which they assert two claims against

Defendants Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon" or

"Defendants").[1] They assert these claims on their own behalf and on behalf all individuals who

---

[1] The Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, federal courts have jurisdiction over cases in which (1) the class consists of 100 or more members, see 28 U.S.C. § 1332(d)(5)(B); (2) any plaintiff is a citizen of a state different from that of any defendant, 28 U.S.C. § 1332(d)(2)(A); and (3) the aggregate amount of the plaintiffs' claims exceeds $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(6). "When a case is initially filed in state court and then removed to federal court, the time-of-filing rule means that we analyze our jurisdiction at the time of removal, as that is when the case first appears in federal court." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009) (citing *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 391 (1998); *Tropp v. W–S Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004)). Defendants have alleged, for purposes of removal, that there are "thousands if not millions" of class members (Notice of Removal ¶ 11, ECF No. 1) and that the amount in controversy exceeds $5,000,000.00 (*id*. ¶ 19). Plaintiff Svoboda is a citizen of Illinois (*id*. ¶ 13), Defendant Amazon.com, Inc. is a citizen of Delaware (its State of incorporation) and Washington (the location of its principal place of business) (*id*. ¶ 14), and Defendant Amazon.com, LLC is a citizen of Delaware (its State of incorporation) and Washington (the location of its principal place of business) (*id*). *See* 28 U.S.C. § 1332(d)(10) (Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."). Thus, at

1

used a virtual try-on feature on Amazon's mobile website or app while in Illinois on or after September 7, 2016. Excluded from the class are: (1) any person who used such a virtual try-on feature only in model mode or for hair color; (2) any judge presiding over this action; (3) all members of any such judge's staff and immediate family; (4) Defendants; (5) any entities in which any Defendant has a controlling interest; (6) Defendant's employees, owners, officers, and directors. [2]

In Count I, Plaintiffs assert a claim against Defendants for violation of the Illinois Biometric Information Privacy Act ("BIPA") section 15(a), 740 ILCS 14/15(a) ("Section 15(a)"), and in Count II, Plaintiffs assert a claim against Defendants for violation of BIPA section 15(b), 740 ILCS 14/15(b) ("Section 15(b)"). Section 15(a) of BIPA requires private entities in possession of biometric identifiers or biometric information to develop and comply with a written policy, made available to the public, that establishes a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information. Section 15(b) prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric identifier or biometric information unless they first: (1) inform the person in writing that biometric identifiers or information will be collected or stored; (2) inform the person of the specific purpose and length of term for which such biometric

---

least one plaintiff is "a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

[2] The class definition alleged in Plaintiffs' amended complaint differs slightly: "All individuals who, while residing in the State of Illinois, had their biometric identifiers or biometric information collected, captured, received or otherwise obtained by Amazon in connection with the use of any virtual try-on feature on any Amazon website or platform." (Am. Compl. ¶ 65.) A class definition may be revised, for example to avoid being over-inclusive or fail-safe, rather than "flatly denying class certification on that basis." *See, e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

identifiers or information is being collected, stored, and used; and (3) receive a written release signed by the person.

"Biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. Excluded from the definition is, among other things, "information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996." *Id*. "Biometric information" is defined as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. Plaintiffs refer to biometric identifiers and biometric information together as "Biometrics." (Am. Compl. ¶ 1.)

Plaintiffs allege that Amazon violated these requirements by collecting, capturing, storing, or otherwise obtaining the facial geometry and associated personal identifying information of thousands if not millions of Illinois residents who used Amazon's virtual "Try-On" programs and applications (the "VTO") from computers and other devices in Illinois without first providing notice and the required information, obtaining informed written consent, or creating written publicly-available data retention and destruction guidelines. (*Id*. ¶ 4.) Plaintiffs seek to prevent Amazon from further violating the privacy rights of Illinois residents and to recover statutory damages for the alleged BIPA violations. (*Id*. ¶ 5.)

Plaintiffs seek statutory damages of $5,000 for each intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 for each negligent violation pursuant to 740 ILCS 14/20(1); injunctive and other equitable relief, including requiring Defendants to comply with BIPA's requirements for the collection, storage,

and use of Biometrics; reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3); and pre- and post-judgment interest. (*Id*. at Prayer for Relief.)

Plaintiffs have filed a Motion for Class Certification ("Motion") along with deposition transcripts, declarations, and other documents gotten through discovery in this case. Amazon opposes Plaintiffs' Motion ("Opposition"), and, like Plaintiffs, submits in support of its Opposition deposition transcripts, declarations, and other documents gotten through discovery. The following facts are undisputed unless otherwise noted.

Amazon sells products to consumers on its mobile website ("mWeb") and shopping app ("mShop" or "App"). VTO is exclusively available on mobile devices. Using these platforms, the VTOs can be used to virtually try on makeup and eyewear. The VTOs are software programs that use augmented reality to overlay makeup and eyewear products on an image or video of a face, allowing the shopper to see what the product might look like on them before deciding to purchase it. One of the VTOs at issue was developed by ModiFace, Inc. and customized for Amazon (the "ModiFace VTO"). The other VTO at issue was developed by Amazon in-house (the "Amazon VTO"), which replaced the ModiFace VTO for portions of the class period.

At a high level, the VTO processes work the same for every user. For all of the VTOs, the user begins by clicking a "try on" (or similar) button on an Amazon product page. The use of VTO technology is optional, and customers who do not wish to use VTO for eligible products can still purchase those products. The first time a customer uses the Amazon VTO, she is shown a pop-up screen that states, "Amazon uses your camera to virtually place products such as sunglasses and lipstick on your face using Augmented Reality. All information remains on your device and is not otherwise stored, processed or shared by Amazon." The customer can click the blue-text hyperlink on the screen, "permissions settings," to "manage this access at any time." If

the customer clicks "Allow this Amazon app to access your camera and skip this step in the future," and "Allow access," she will be prompted to give permission for the Amazon VTO to use the camera on her device. Customers are likewise asked to give permission for Amazon to use their cameras the first time they use the ModiFace VTO. Only after granting this permission may the customer use VTO technology to virtually "try on" a product. Users may select live mode or photo upload mode to superimpose the try-on product on an image of their own face. Or they may select model mode to see the product on a model's face. For live mode and photo upload mode, all of the VTOs use software to detect the users' facial features and use that facial data in order to determine where to overlay the virtual products.

Amazon submits evidence as to how the two VTOs differ in operation. The Amazon VTO comes in two forms; beauty VTO technology is available for certain full-coverage lip products, including lip gloss, lip stain, and lipstick, while eyewear VTO technology is available for glasses. The VTOs use different processes when used for lip products as compared to eye products to identify and superimpose images over the relevant part of the user's face. For beauty, the user's device detects approximately 20 two-dimensional landmarks for the boundaries of the lip region. When a customer activates Amazon's VTO, the user's device detects the outline of the user's lips and then the VTO technology sends information about the product, such as shade and gloss level, to the user's device, which renders the virtual product onto the lip. For eyewear, the user's device detects landmarks of the eyes and nose region when a customer wants to virtually try on a pair of glasses, to superimpose the image of glasses in the correct location.

The ModiFace VTO is available for lip liner, eye shadow, eye liner, and hair color. The exact processes used by the ModiFace VTO to facilitate "try-on" are ModiFace's intellectual property, and Amazon only licenses the ModiFace VTO.

5

Plaintiff Svoboda testified that she used VTO while shopping for lipstick on Amazon's mobile website in 2020. At that time she was living in Illinois. She testified that she elected to use photo upload mode to virtually try on various shades. She did not purchase anything after using VTO. ModiFace VTO Feature records usage only when the user adds a product to a virtual cart. According to the usage data, the only records of Plaintiff Svoboda using the ModiFace VTO reflect her use in model mode, rather than a use where the product was applied to her face.

Plaintiff Colosi testified that she used a VTO feature while shopping for lipstick, eye liner, and eye shadow in 2019, 2020, 2021, and March 2022. At that time she was living in Illinois. Colosi's sole recorded use of the ModiFace VTO from an Illinois-associated IP address was in model mode, which applies products to a model's face, rather than the user's face. No Amazon records reflect Plaintiff Colosi ever using the Amazon VTO in Illinois.

Neither named Plaintiff alleges they used VTO technology to try on eyewear. Although Colosi alleges that she used the VTO feature when shopping for eye liner and eye shadow, records reflect that these uses were in the ModiFace VTO's model mode.

Discovery to date establishes there are at least 163,738 persons who used a VTO on Amazon's platforms while in Illinois during the class period. Amazon submits the data available for determining a customer's location at the time they used either VTO. First, each Amazon account has a registered billing address that corresponds to the primary card associated with that account.

Second, VTO usage data maintained by Amazon includes information pertaining to the Internet Protocol ("IP") address associated with a given VTO use. Generally, an IP address is an identifier assigned by internet providers to devices connected to the internet. These assignments have regional indicators and may correlate with geography; however, they do not follow state

6

lines or otherwise conform precisely with states, cities, counties, or other geographic labels. Amazon's VTO records data field include "country_code" and "country_code_state." Amazon submits that these indicators are "best guesses" of a users' location based on available IP information and are not conclusive records of where VTO was used. MaxMind, the third-party service provider that informs Amazon's geolocation coding, states that its product is 74% accurate for identifying whether an IP is within 100 km of a given U.S. city. Similarly, ModiFace data includes "geo_IP-country_code" and "geo_IP_state_code." Where ModiFace's systems have less than 85% confidence in the users' state, this field returns the result "untrusted_state" or "unknown_state."

## DISCUSSION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "A class action may be maintained if Rule 23(a) is satisfied and" if the case falls within at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *see also Wal-Mart*, 564 U.S. at 345. Rule 23(a) allows "[o]ne or more members of a class" to "sue or be sued as representative parties on behalf of all class members only if:"

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) allows class certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(c)(1)(A) requires that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).

To support a motion for class certification, a "party seeking class certification must affirmatively demonstrate [her] compliance with the Rule—that is, [s]he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350. Thus, the "party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 433 (7th Cir 2015). A court considering a motion for class certification must engage in "a rigorous analysis" that "will frequently" overlap with the merits, because the considerations "are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (citations omitted).

Plaintiffs seek to certify a Class of all individuals who used a virtual try-on feature on Amazon's mobile website or app while in Illinois on or after September 7, 2016. Excluded from the Class are: (1) any person who used such a virtual try-on feature only in model mode or for hair color; (2) any judge presiding over this action; (3) all members of any such judge's staff and immediate family; (4) Defendants; (5) any entities in which any Defendant has a controlling interest; (6) Defendant's employees, owners, officers, and directors.

### 1. Numerosity

"The crux of the numerosity requirement is not the number of interested persons per se, but the practicality of their joinder into a single suit." *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). Here, Plaintiffs allege that there are "thousands if not millions" of class members (Am. Compl. ¶ 4) and state in briefing that discovery to date establishes there are over 160,000 persons who used a VTO on Amazon's platforms while in Illinois during the class period. (Mot. 5.) Defendants do not contest numerosity. Accordingly, the Court concludes that joinder would be impracticable and the numerosity requirement is met.

### 2. Adequacy, Standing, and Typicality

Rule 23(a)'s requirement that "the representative parties will fairly and adequately protect the interests of the class," has two components: the adequacy of the named plaintiffs and the adequacy of proposed class counsel. *See Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citations omitted).

The Court begins with the second issue first. Proposed class counsel are Keith James Keogh, Theodore Herbert Kuyper, and Timothy J. Sostrin, of Keogh Law, Ltd. Their adequacy has not been challenged.

Before appointing class counsel, Rule 23(g) requires that the court consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Plaintiffs' proposed class counsel submit that they have extensive experience in complex litigation and consumer class actions involving statutory privacy claims such as BIPA, and they have been appointed class counsel in scores of cases arising under various consumer protection statutes including BIPA. (Mot. Ex. 12 at ¶¶ 6–48.) Plaintiffs' proposed class counsel further state that they have vigorously pursued the class's claims from the outset, from investigating the claims and drafting and filing several well-pled complaints, to briefing and defeating Amazon's motions to dismiss, engaging in other contested motion practice, and taking extensive written and oral merits and class discovery (in the U.S. and Canada) to develop the facts necessary for class certification and trial, including retaining and consulting with both consulting and testifying experts. (*Id*. ¶¶ 2–3.) Proposed class counsel state that they are ready and able to prosecute this case to complete. Accordingly, the Court finds that Plaintiffs' proposed class counsel are adequate.

Further, for the reasons set forth below, the Court certifies Plaintiffs' proposed class. "[A] court that certifies a class must appoint class counsel" and, in doing so, must consider the factors set forth in Rule 23(g)(1)(A). *See supra*. The Court is satisfied the requirements of Rule 23(g) are met and appoints Keith James Keogh, Theodore Herbert Kuyper, and Timonthy J. Sostrin, of Keogh Law, Ltd. as class counsel in this case.

Next the Court considers the adequacy of the named Plaintiffs. This requirement "is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Fournigault v. Indep. One Mortg. Corp.*, 234 F.R.D. 641, 646

(N.D. Ill. 2006). The first element—competent counsel—is satisfied for the reasons set forth above.

Amazon argues that the named Plaintiffs are inadequate and atypical because they allege they used the VTO for lipstick, not eyewear or eye makeup, but the majority of the proposed class is comprised of individuals who used the VTO for eyewear. Amazon argues that the VTO technology for lipstick versus eyewear have factual dissimilarities that may require different outcomes as to each use type and are subject to different defenses, and so individuals who used VTO for eyewear or eye makeup should be severed from Plaintiffs' proposed class. The Court considers each of Amazon's specific arguments on these points in turn.

First Amazon argues that a critical factual question is whether either VTO for eyewear or VTO for lipstick uses information that is "biometric." Because the named Plaintiffs do not claim that their ocular biometrics were collected, Amazon argues that they have no stake in the outcome for such users, and therefore lack standing to sue regarding eyewear or eye makeup.

Article III limits federal court jurisdiction to cases or controversies in which the plaintiff has suffered an injury-in-fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[I]t bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."). Plaintiffs contend that the named Plaintiffs have standing because they have suffered the same type of injury as every other class member: invasion of their biometric privacy rights through their use of the VTO technology on Amazon's mobile website or app. Named Plaintiffs also seek the same type of recovery as everyone in the class: statutory damages under BIPA. *See Tapia-Rendon v. United Tape & Finishing Co.*, No. 21 C 3400, 2023 WL 5228178, at *4 (N.D. Ill. Aug. 15, 2023) (finding named plaintiff that alleged

11

A11

a similar type of injury (violation of BIPA) and type of recovery (statutory damages) possessed

"'the same interest and suffer[ed] the same injury as the class members'" (citing *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997))), *reconsideration denied,* No. 21 C 3400, 2024

WL 406513 (N.D. Ill. Feb. 2, 2024). Indeed, Amazon does not explain how mapping the user's

mouth versus eyes and nose might be materially different for determining whether the

information is "biometric," when each VTO uses the same augmented reality process to map

facial landmarks. *See* 740 ILCS 14/10 ("'Biometric identifier' means a retina or iris scan,

fingerprint, voiceprint, or scan of hand *or face geometry*." (emphasis added)).

　　Second, Amazon challenges the adequacy of the named Plaintiffs on the basis that they

have no incentive to contest the defense—specific to the users of VTO for eyewear—that BIPA's

healthcare exception bars claims arising from the virtual try-on of eyewear. *See* 740 ILCS 14/10

("Biometric identifiers do not include information captured from a patient in a health care setting

or information collected, used, or stored for health care treatment[.]"). Amazon points to three

district court cases holding that BIPA's healthcare exception exempts BIPA claims based on

virtual try-on for glasses. *Warmack-Stillwell v. Christian Dior, Inc.*, 655 F. Supp. 3d 742, 747

(N.D. Ill. 2023); *Svoboda v. Frames for Am., Inc.*, No. 21 C 5509, 2022 WL 4109719, at *2

(N.D. Ill. Sept. 8, 2022), *appeal dismissed,* No. 22-2781, 2023 WL 6836997 (7th Cir. Apr. 5,

2023); *Vo v. VSP Retail Dev. Holding, Inc.*, No. 19 C 7187, 2020 WL 1445605, at *2 (N.D. Ill.

Mar. 25, 2020).

　　It is true that "[t]he presence of even an arguable defense peculiar to the named plaintiff

or a small subset of the plaintiff class may destroy the required typicality of the class as well as

bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd. v. King*

*Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (quoting *J.H. Cohn & Co. v. Am.*

12

**A12**

*Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) (internal quotation marks omitted));
*see also Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018) ("A representative
might be inadequate if he is subject to a substantial defense unique to him."). In that scenario,
"[t]he fear is that the named plaintiff will become distracted by the presence of a possible
defense applicable only to him so that the representation of the rest of the class will suffer." *CE
Design*, 637 F.3d at 726 (citations and internal quotation marks omitted). There is no such fear
here, where the named Plaintiffs have not alleged that they used the VTO to "try on" eyewear
and so would not be subject to the general health care exemption defense.

More generally, "[c]lass representatives must not have interests antagonistic to the class
because they may interfere with the vigorous prosecution of the action." 1 McLaughlin on Class
Actions § 4:30 (20th ed.) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856–57 (1999);
*Amchem*, 521 U.S. at 625–26 (1997)); *see also Amchem*, 521 U.S. at 625 ("The adequacy inquiry
under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class
they seek to represent."); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A class is
not fairly and adequately represented if class members have antagonistic or conflicting claims."
(citation omitted)). However, "the mere possibility that a trivial level of intra-class conflict may
materialize as the litigation progresses [does not] foreclose[] class certification entirely." *Abbott
v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013). The following treatise excerpt
sheds light on when conflicts render the proposed class representative inadequate:

> The linchpin of adequate represen[t]ation is alignment of interests and incentives
> between the representative plaintiffs and absent class members. Conflicts are
> readily identified when class members' interests directly oppose those of the
> proposed representative. A conflict concerning the allocation of relief or remedies
> among class members with competing interests can be fundamental and render a
> representative plaintiff inadequate. The interests of class members in a class action
> recovery always differ to some extent because of their varying participation or the
> utility of the consideration to each. This inevitable variation among class members

13

A13

does not automatically preclude a determination that a particular representative can adequately represent the interests of all class members.

1 McLaughlin on Class Actions § 4:30 (20th ed.).

Here, there is no indication that the named Plaintiffs' interests are antagonistic to, or directly conflict with, those members of the class who used VTO to "try on" eyewear. Rather, Amazon's concern is that Plaintiffs lack the incentive to vigorously contest the healthcare exception defense which, at this point, is merely speculative. *See Breedlove v. Tele-Trip Co. Inc.*, No. 91 C 5702, 1993 WL 284327, at *7 (N.D. Ill. July 27, 1993) ("[C]lass certification should not be denied by speculative suggestions of potential conflicts." (citing *Rosario*, 963 F.2d at 1018–19)).

For all of these reasons, the Court is persuaded that the named Plaintiffs have suffered the same alleged injury as the class members and have a sufficient interest in the outcome of the case—including for those who used VTO for eyewear—to ensure vigorous advocacy. Accordingly, Plaintiffs have standing to bring their claims and are adequate class representatives. Rule 23(a)'s adequacy requirement is therefore met.

Finally, the Court considers typicality. Although Amazon proclaims that the named Plaintiffs are atypical for the same reasons they are inadequate, Amazon does not separately address the typicality analysis. "In many cases . . . the requirement of typicality merges with the further requirement that the class representative 'will fairly and adequately protect the interests of the class.'" *CE Design Ltd.*, 637 F.3d at 724 (citing Fed. R. Civ. P. 23(a)(4)). That said, adequacy is the proper rubric for considering particularized defenses. *Id.* at 725; *see supra*. Typicality under Rule 23(a)(3) should instead "be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members[.]" *CE Design Ltd.*, 637 F.3d at 725 (citation and internal quotation marks omitted).

14

**A14**

Typicality is satisfied when a plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Rosario*, 963 F.2d at 1018. "The individual claims may feature some factual variations as long as they 'have the same essential characteristics.'" *Beaton*, 907 F.3d at 1026 (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)).

The named Plaintiffs' claims arise from the same course of conduct that gives rise to other class members' claims (Amazon purportedly collecting, capturing, possessing, and using their facial templates via its VTOs) and are based on the same legal theory (violation of BIPA Sections 15(a) and (b)). Accordingly, the named Plaintiffs' claims are typical of the claims of the class.

### 3. Commonality

Next, to be suitable for class action treatment, a case must involve questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The Supreme Court has described what makes an issue common:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. . . . Their claims must depend upon a common contention[.] . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Wal-Mart*, 564 U.S. at 349–50 (internal punctuation and citations omitted). In describing the difference between common and individual questions, the Supreme Court has explained:

> An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'

15

**A15**

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

Plaintiffs' and the class's BIPA claims depend upon the same contention and alleged unlawful course of conduct: Amazon's use of scans of face geometry and face templates through VTOs without first making disclosures, obtaining signed written consent, and developing a publicly available written biometric data retention and destruction policy. The following common questions are central to their claims:

1) Whether the face-related data used by Amazon's VTOs constitute biometric identifiers or biometric information under BIPA, 740 ILCS 14/10;

2) If so, whether the VTOs' use of the face-related data means that Amazon collected, captured, obtained, or possessed biometric identifiers and biometric information within the meaning of 750 ILCS 14/15;

3) If so, whether Amazon disclosed to VTO users in writing the information specified in 740 ILCS 14/15(b)(1)–(2);

4) Whether Amazon obtained written releases signed by Plaintiffs and the class members, 740 ILCS 14/15(b)(3);

5) Whether Amazon developed a publicly available written policy governing retention and permanent destruction of biometric data related to the VTOs, 740 ILCS 14/15(a); and

6) Whether Amazon's alleged BIPA violations were negligent, intentional, or reckless, 740 ILCS 14/20(1)–(2).

The putative class plainly share common factual questions about the functionality of the Amazon and Modiface VTO software and Amazon's use of the class members' facial geometry data as well as legal questions about whether that use violated BIPA. Answering these questions will resolve issues that are central to the validity of each one of the claims in one stroke, and so the Court finds that the commonality requirement is met. *See Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2022 WL 854348, at *3 (N.D. Ill. Mar. 22, 2022) ("As discussed earlier regarding commonality, the questions of law and fact underlying the class members' BIPA claims are essentially identical and will be premised on common proof."); *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018) ("[T]here is no doubt that a template-based class poses common legal and factual questions, namely: did [the defendant]'s . . . technology [at issue] harvest biometric identifiers as contemplated under BIPA, and if so, did [the defendant] give users prior notice of these practices and obtain their consent?"), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019); *see also Bayeg v. The Admiral at the Lake*, No. 19 CH 8828 (Cir. Ct. Cook Cnty., May 25, 2023) (Mot. Ex. 3) (certifying contested BIPA class); *Palacios v. H&M Hennes & Mauritz, LP*, No. 18 CH 16030 (Cir. Ct. Cook Cnty., Mar. 16, 2023) (Mot. Ex. 2) (certifying class of people who used time clock at issue); *Morris v. Wow Bao, LLC, et al.*, No. 17-L-12029 (Cir. Ct. Cook Cnty., Dec. 14, 2021) (Mot. Ex. 1) (certifying BIPA class of customers who used a facial recognition kiosk at issue).

### 4. Predominance and Superiority

A Rule 23(b)(3) class action may be certified only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making this inquiry, a court should

consider the following factors:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed R. Civ. P. 23(b)(3)(A)–(D).

With respect to predominance, the "inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Rule

23(b)(3)'s "predominance criterion is far more demanding" than "Rule 23(a)'s commonality

requirement[,]" *id.* at 623–34, and "is satisfied when 'common questions represent a significant

aspect of a case and can be resolved for all members of a class in a single adjudication.'"

*Messner*, 669 F.3d at 815 (cleaned up) (citing 7AA Wright & Miller, Federal Practice and

Procedure § 1778 (3d ed. 2011)). The analysis "begins, of course, with the elements of the

underlying cause of action." *Id.* (internal quotation marks omitted) (quoting *Erica P. John Fund,*

*Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). "If, to make a prima facie showing on a given

question, the members of a proposed class will need to present evidence that varies from member

to member, then it is an individual question." *Id.* (quoting *Blades v. Monsanto Co.*, 400 F.3d 562,

566 (8th Cir. 2005)). But the presence of individual issues does not necessarily destroy

predominance. *Id.* ("Individual questions need not be absent. The text of Rule 23(b)(3) itself

contemplates that such individual questions will be present.").

As for the superiority requirement, it demands that a class action be the superior way to

"fairly and efficiently" adjudicate the dispute. Fed. R. Civ. P. 23(b)(3). While they are distinct

inquiries, the predominance and superiority analyses can overlap, which Amazon contends is the circumstance here. When considering superiority, courts must weigh "both the costs *and benefits* of the class device" and "assess efficiency with an eye toward 'other available methods.'" *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663–64 (7th Cir. 2015) (emphasis original).

Plaintiffs make the compelling argument that their and the class members' claims that Amazon violated Sections 15(a) and (b) hinge entirely on the common questions identified above, all of which can be resolved through class-wide evidence and therefore predominate any individual issues. *See Golon v. Ohio Sav. Bank*, No. 98 C 7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999) ("[T]he predominance standard is met when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." (cleaned up) (citation omitted)); *see also Rogers*, 2022 WL 854348, at *3 (finding predominance satisfied because "the questions of law and fact underlying the class members' BIPA claims are essentially identical and will be premised on common proof. Specifically, the common issue of demonstrating BNSF operated the [technology at issue] and collected biometric information in violation of BIPA will predominate over any potential individualized issues."); *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. at 545–48. More specifically, Plaintiffs argue that the questions posed by the Section 15(b) claim can be resolved for the class as a whole by evidence regarding the type of face-related data used by Amazon's VTOs, which are software that Plaintiffs submit evidence to show works (at least at a high level) the same for everyone in the class, as well as evidence that Amazon uniformly made no BIPA-compliant disclosures to, and obtained no written releases from, any of its VTO users. As for the Section 15(a) claim, the questions of whether Amazon possessed the face-related data and developed a publicly available written biometric data

retention and destruction policy applicable to the VTOs can be resolved by common evidence regarding the VTO functions and Amazon's written policies or lack thereof.

Defendants raises several concerns that they claim defeat predominance and superiority, each of which the Court considers and finds uncompelling.

### i. Manageability

Amazon argues that individual inquiries required to identify class members and the scope of their claims render the proposed class unmanageable. It posits that individualized inquiries would present enormous managerial challenges, impose a staggering burden on the parties and the Court, and overwhelm any efficiencies derived from resolving issues common to the class.

The Court first addresses Amazon's geographic concerns. Amazon argues that the proposed class is limited to persons who used VTO while in Illinois, who are challenging to identify because VTO is available exclusively on mobile devices and so its users will engage with it on-the-go. Although Amazon stores users' IP addresses (which Plaintiffs contend can be used to confirm whether the VTO occurred in Illinois), an IP address does not reflect the location of the end user; rather, it reflects the location of a data center controlled by the user's internet-service provider, which generally is within the same geographic area as the user but may not necessarily be in the same state. Amazon contends that IP addresses are unreliable geo-locators here for additional reasons, including that VTO is often used through cellular data rather than a Wi-Fi connection, which is less geographically reliable than broadband service; with respect to ModiFace specifically, its IP tool codes the location of all cellular-connected usage as "untrusted;" to protect user privacy, Amazon does not record the last digit in an IP address (which Plaintiffs contest), meaning the available portion of the IP resolves to a network, rather than a specific device; and many individuals use VPNs to mask their IP address for privacy or

20

data security, in which event a geolocation tool would resolve to a false location selected by the VPN.

In *In re Facebook Biometric Info. Priv. Litig.*, the district court certified a class of "Facebook users located in Illinois for whom Facebook created and stored a face template after June 7, 2011." 326 F.R.D. at 540. The court considered Facebook's objections to commonality and predominance based on extraterritoriality concerns because its servers were not located in Illinois. The court found, "[t]here is no genuine dispute that this case is deeply rooted in Illinois. The named plaintiffs are located in Illinois along with all of the proposed class members, and the claims are based on the application of Illinois law to use of Facebook mainly in Illinois." *Id*. at 547.

Plaintiffs contend that Illinois billing addresses, IP addresses from which the VTO was used, and geo-location data identifying the region of the user based on the IP address will identify persons who used the VTOs while in Illinois, and claim-form affidavits can serve as an additional cross-check. The Court agrees.[3] The Court has the discretion to consider class member affidavits or "creative solutions to the administrative burdens of the class device." *Mullins*, 795 F.3d at 669, 672; *Beaton*, 907 F.3d at 1030 ("The district court recognized that individualized inquiries could be handled through 'streamlined mechanisms' such as affidavits and proper auditing procedures. We agree. Defendants' due process rights are not harmed by such case-management tools."). The majority of ModiFace VTO and Amazon beauty VTO records with an Illinois billing address also have an Illinois IP address according to Amazon's geo-locator data, which Plaintiffs contend corroborate the reliability of the records. The Court does not share

---

[3] For this reason, the Court declines to resolve Plaintiffs' alternative argument regarding judicial estoppel.

Amazon's concerns that identifying class members who used VTO in Illinois renders the class unmanageable. *Cf. In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. at 547 ("Facebook has not tendered any evidence to indicate that the circumstances relating to the challenged conduct did not occur 'primarily and substantially within' Illinois. Class members do not need to show more in order to sue under BIPA, particularly in light of BIPA's express concerns about data collection by 'major national corporations.'" (cleaned up) (citations omitted)). When considering manageability concerns about class member identification, "a district judge has discretion to (and . . . normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors. And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation." *Mullins*, 795 F.3d at 664. "[R]efusing to certify on manageability grounds alone should be the last resort." *Id.*

Next, although the named Plaintiffs testified that they used VTO while they lived in Illinois, Amazon contends that its data does not reflect that either ever used Amazon's VTO while in Illinois. Amazon argues that this means either the IP addresses are unreliable for determining the location of use or the named Plaintiffs are inadequate class representatives who lack standing to bring claims pertaining to the Amazon VTO. Plaintiffs, on the other hand, argue that every data production prior to the last one included records of Plaintiff Colosi using the Amazon VTO. Further, both named Plaintiffs testified that they were living in Illinois at the time they used the VTO, which is sufficient evidence at this stage to show standing. *Cf. Mullins*, 795 F.3d at 669 ("Given the significant harm caused by immunizing corporate misconduct, we believe a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed.").

Amazon next argues that class members cannot be identified with class-wide data, and the proposed class is simultaneously over- and under-inclusive, for the following reasons:

- Amazon's records show which accounts, not individuals, engaged with VTO, and Amazon accounts are often shared among family and friends through either discrete user profiles or password sharing;

- Because VTO can only be used on mobile devices, multiple people may pass a phone and take turns trying on a product or children may play with VTO using a parent's phone;

- Shoppers can use VTO while not logged in to an account, in which case the records do not provide account information for that use; and

- Data from the ModiFace VTO specifically only records VTO uses when the shopper adds the product to their virtual cart, meaning class members could allege violations that are not corroborated in the data.

Amazon contends that its records cannot resolve these discrepancies on a class-wide basis and so there will have to be an individualized inquiry into who used the VTO and whether that use occurred in Illinois, particularly because each use could potentially give rise to an additional $5,000 in liability, and so individualized actions are the superior method of adjudication.

As set forth above, Plaintiffs' vision for identifying class members will result in the identification of people who used VTO in Illinois during the class period. Plaintiffs do not need to identify every member of the class at the certification stage. *See Mullins*, 795 F.3d at 665 ("Due process simply does not require the ability to identify all members of the class at the certification stage.").

Further, Amazon's concerns regarding passing the phone are too speculative to be a basis for denying certification. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018) ("[A]llowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases 'wide latitude to inject frivolous issues to bolster or undermine a finding of predominance.'" (citation omitted)); *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 850 (N.D. Ill. 2021) ("[W]ithout 'specific evidence—as opposed to mere speculation— that [a] purportedly individualized issue predominates over common issues,' the court cannot conclude that individualized factual questions predominate." (quoting *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 298 (N.D. Ill. 2014))).

Amazon's over-inclusivity concern does not merit a different result. The Seventh Circuit has cautioned against refusing to certify on the basis that the there may be fraudulent or inaccurate claims. *Mullins*, 795 F.3d at 668. ("By 'focusing on making absolutely certain that compensation is distributed only to those individuals who were actually harmed,' the heightened ascertainability requirement 'has ignored an equally important policy objective of class actions: deterring and punishing corporate wrongdoing.'"). And Plaintiffs are correct in pointing out that the class definition is not tied to whether Amazon has a record of use. For this reason, *Espejo v. Santander Consumer USA, Inc.*, is distinguishable. No. 11 C 8987, 2016 WL 6037625, at *12 (N.D. Ill. Oct. 14, 2016) (proposed class could not be ascertained where plaintiffs themselves challenged the content, clarity, accuracy, and completeness of the records on the very points needed to determine class membership, it would require a liability determination to determine membership, and plaintiffs failed to identify any group of members who fell within it). As discussed above, Illinois billing addresses, IP addresses, and geo-location data will identify

24

persons who used the VTOs while in Illinois, and claim-form affidavits can serve as an additional cross-check.

**ii.     Affirmative Defenses and Individual Damages**

Next Amazon argues that it has unique defenses to every member of the putative class because damages are "discretionary rather than mandatory" under BIPA, citing *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 929, *as modified on denial of reh'g* (July 18, 2023). In particular, Amazon points out that the voluntary nature of Amazon's VTO gives rise to affirmative defenses such as consent, failure to mitigate, estoppel, and waiver, which can vary depending on the conduct of each individual class member and which may affect the availability discretionary damages. Amazon contends that due process requires that Amazon be given an opportunity to present its defenses to each claim for statutory damages, and that the analysis is inherently individualized and would overwhelm common questions and undermine the efficiencies of the class device. The Court disagrees.

*Cothron* held that a separate BIPA claim accrues "with every scan" of biometric data before the defendant obtains the informed written consent required by BIPA, *id.*, and rejected the argument that a different result was warranted because "class-wide damages . . . may exceed $17 billion," reasoning "this court has repeatedly held that, where statutory language is clear, it must be given effect, even though the consequences may be harsh, unjust, absurd or unwise." *Id.* at 928 (internal quotation marks omitted) (citations omitted). The Illinois Supreme Court nonetheless explained that "'[a] trial court presiding over a class action—a creature of equity— would certainly possess the discretion to fashion a damage award that (1) fairly compensated claiming class members and (2) included an amount designed to deter future violations, without

25

destroying defendant's business.'" *Id*. at 929 (quoting *Cent. Mut. Ins. Co. v. Tracy's Treasures, Inc.,* 19 N.E.3d 1100, 1118 (Ill. App. Ct. 1st Dist. 2014)).

Plaintiffs argue that nothing in *Cothron*, which was a class action, suggests that the trial court's discretion to reduce an excessive damage award creates individual issues. Plaintiffs point instead to *Murray v. GMAC Mortg. Corp.*, in which the Seventh Circuit stated: "An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's *overall conduct* and control its *total* exposure." 434 F.3d 948, 954 (7th Cir. 2006) (emphasis added). Plaintiffs' position finds support in a recent district court case that rejected a similar argument to the one Amazon makes here. *Tapia-Rendon v. United Tape & Finishing Co.*, No. 21 C 3400, 2023 WL 5228178, at *6 (N.D. Ill. Aug. 15, 2023) ("[T]he fact that damages under the BIPA are discretionary after *Cothron* does not mean that they cannot be awarded in a common class-wide manner."), *reconsideration denied,* No. 21 C 3400, 2024 WL 406513 (N.D. Ill. Feb. 2, 2024).[4] In that case, the court found that the class was seeking statutory, not actual, damages, which would be "assessed on a common per-scan basis across the class, even if the amount differs from the $1,000 or $5,000 liquidated damages amounts provided in the BIPA." *Id*. "If it at some point [the defendant's] manageability concerns become realized, 'Rule 23(c)(1)(B) specifically recognizes the possibility of certifying not just class claims, but also class issues." *Id*. at *7 (quoting *Arreola v. Godinez*, 546 F.3d 788, 800–01 (7th Cir. 2008) (internal quotation marks omitted)).

---

[4] The Court is further unpersuaded that the factors set forth in the Seventh Circuit pattern jury instruction for awarding statutory damages for copyright infringement either apply here or show that individualized issues predominate. Additionally, nothing in *Rogers* supports Amazon's position that an inquiry into the application of affirmative defenses requires individual determinations of discretionary BIPA damages post-*Cothron*. 2023 WL 4297654, at *9.

Consequently, "the need for individual damages determinations does not, in and of itself, require denial" of class certification. *Arreola*, 546 F.3d at 801.

The cases relied upon by Amazon where individual damage calculations would overwhelm questions common to the class are distinguishable. *Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013) (finding plaintiffs' damages model "failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised" and, without another class-wide methodology, individual damage calculations would predominate); *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 340 (7th Cir. 2023) (district court erred in certifying class without considering the elements of plaintiff's claims or defendant's argument that breach of contract claim would lead to many individual questions regarding damages); *Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008) (finding class certification would only give rise to hundreds or thousands of individual rescission procedures to "unwind" individual credit transactions); *Wacker Drive Exec. Suites, LLC v. Jones Lang LaSalle Americas (Illinois), LP*, No. 18 C 5492, 2022 WL 1045701, at *21 (N.D. Ill. Apr. 7, 2022) (where tenants sought damages for increased costs for union labor compared to non-union labor but failed to provide any expert estimate of labor costs, determining damages would require individual proof based on each contractor's estimate of union labor costs).

Plaintiffs further argue that the defenses of consent, failure to mitigate, estoppel, and waiver do not apply to BIPA's statutory claims, citing to authority in support of their position. Amazon does not cite any authority that would support the application of those defenses to BIPA claims. Regardless, "whether these defenses are even available on BIPA claims is a common issue, and if they are, so too is their application." *Tapia-Rendon*, 2023 WL 5228178, at *8 (cleaned up). As Amazon frames their consent defense—namely, the use of Amazon's VTO

27

**A27**

technology is completely voluntary, and in order to access VTO, shoppers must push a "try on" button and are advised that no data used by VTO leaves their device—it is equally applicable to all class members. As for its estoppel defense, Amazon does not explain how it applies in this case and there is no indication that its application would vary across the class. *See Tapia-Rendon*, 2023 WL 5228178, at *8.

With respect to waiver and failure to mitigate, Amazon contends that the data shows that Plaintiff Colosi continued to use VTO out-of-state after joining this lawsuit with full knowledge of her allegations, creating waiver and failure to mitigate defenses. Plaintiffs points out that Amazon cites no evidence in support of that claim. Further, Amazon's corporate representative testified that its waiver and failure to mitigate defenses are "not based on any facts," and in any event, out-of-state uses of VTO fall outside the scope of this lawsuit. Given the lack of factual and legal support that these defenses even apply to this case, the Court is not persuaded that individual inquiries into whether these defenses apply, or would require individualized damages calculations, would predominate over the plainly common questions. *Messner*, 669 F.3d at 815 ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."); *Mullins*, 795 F.3d at 671 ("It has long been recognized that the need for individual damages determinations at [a] later stage of the litigation does not itself justify the denial of certification.").[5]

---

[5] *Hyderi v. Washington Mutual Bank, FA* is inapposite. 235 F.R.D. 390, 406 (N.D. Ill. 2006) (denying class certification for RESPA claims where class proceedings would at most settle a limited slice of the litigation and where litigation would require hundreds of follow-on proceedings to determine failure to mitigate, causation, consequential economic damages, and mental anguish).

28

### iii.    Size of Possible Damages

Next Amazon argues that the core policy behind class actions—to provide a procedural mechanism to incentivize suits involving a large number of class members who each incurred a *de minimis* injury and who would not individually bring a suit—is not implicated here. *See, e.g.*, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Amazon argues that under Plaintiffs' theory, the mean recovery for class members would exceed $60,000, with over 1,400 class members recovering over $500,000 and more than 250 class members eligible to recover over $1,000,000. And, as Amazon points out, hundreds of BIPA cases have been filed. As the argument goes, because there is a significant incentive to sue under BIPA even on an individual basis, a class is unnecessary. Amazon argues that the possibility of an excessive damage award weighs against a finding of superiority and compromises Amazon's due process rights, citing *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416–17 (2003) (holding a punitive damages award of $145 million, where full compensatory damages are $1 million, is excessive and violates due process).

This Court is persuaded by the Seventh Circuit's reasoning in *Murray*, which found a similar argument to be an improper ground on which to deny class certification:

> Having upbraided Murray for abandoning compensatory damages and thus seeking too little, the district judge also rebuked her for seeking too much. He wrote: "If Murray and the proposed class members were to prevail at trial, GMAC would face a potential liability in the billions of dollars for purely technical violations of the FCRA . . . Rule 23 is not intended to encourage such abuses of the class action mechanism."
>
> The reason that damages can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per

29

person, 15 U.S.C. § 1681n(a)(1)(A), combined with GMACM's decision to obtain the credit scores of more than a million persons. . . .

The district judge sought to curtail the aggregate damages for violations he deemed trivial. Yet it is not appropriate to use procedural devices to undermine laws of which a judge disapproves. . . . Maybe suits such as this will lead Congress to amend the Fair Credit Reporting Act; maybe not. While a statute remains on the books, however, it must be enforced rather than subverted. An award that would be unconstitutionally excessive may be reduced, . . . but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it.

*Murray*, 434 F.3d at 953 (citations omitted); *see also Tapia-Rendon*, 2023 WL 5228178, at *7 (finding *Murray* forecloses the argument that the potential for an excessive judgment under BIPA violates a defendant's constitutional due process rights).

Although class actions with high potential liability unquestionably place pressure on defendants to settle, that pressure "must be balanced against the undoubted benefits of the class action that have made it an authorized procedure for employment by federal courts." *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995). Plaintiffs contend that they have already expended substantial expert costs in the six figures to analyze Amazon's software, with fact and expert discovery then-ongoing. A class action is superior where "no rational individual plaintiff would be willing to bear the costs of [the] lawsuit." *Suchanek*, 764 F.3d at 760; *see also id.* ("In this case, resolution of the merits may require costly survey evidence and expert testimony, along the lines plaintiffs have proffered for certification purposes, to prove the allegation that the GSC packaging was likely to mislead a reasonable consumer."). Very few individuals could or would expend such costs. Indeed, Plaintiffs point out that the statutory damages available under BIPA have not been a sufficient incentive for a single member of the proposed class to sue Amazon individually. *See Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D.

551, 562 (N.D. Ill. 2015) ("The relatively substantial recovery awaiting many of the management pilots, standing alone, does not defeat superiority. Indeed, 'the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high.'" (quoting *Amchem Prods.*, 521 U.S. at 617)); *see also* 2 Newberg and Rubenstein on Class Actions § 4:70 (6th ed.) ("[A] complete lack of other litigation concerning the matter at hand supports the conclusion that a class action would be superior to individual litigation." (collecting cases)).

Further, a class action is "superior when it 'may forestall an inefficient and uneconomical flood of individual lawsuits and/or prevent inconsistent outcomes in like cases,'" which "is an especially powerful concern when . . . common issues predominate strongly." *Coleman through Bunn v. D.C.*, 306 F.R.D. 68, 87 (D.D.C. 2015) (quoting 2 Newberg and Rubenstein on Class Actions § 4:67 (5th ed.)); *see also Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141, at *7 (N.D. Ill. Aug. 9, 2002) (superiority satisfied as "it would be wholly inefficient to try thousands of separate cases that would allege the same misconduct and provide the same proof of such"), *aff'd sub nom. Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003). Here, common issues predominate strongly, and class proceedings will resolve liability, ensure uniformity of decision, avoid duplicative resolution of complex common issues, preserve party and judicial resources, and promote efficiency. Further, "[t]he more claimants there are, the more likely a class action is to yield substantial economies in litigation." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). The potential class comprises over 160,000 individuals, all with virtually identical claims that will involve common proof. "It can hardly be disputed that

resolving these claims through a class action "would be more efficient than proceeding with hundreds of individual suits." *Tapia-Rendon*, 2023 WL 5228178, at *6.

Amazon relies upon several cases for the proposition that alternative methods are superior to class treatment because damages would sufficiently incentivize individual proceedings. But those cases are distinguishable because, unlike here, the efficiencies of the class action device did not outweigh the potential incentive for individual suits or alternative methods for resolving the dispute. *See Andrews*, 545 F.3d at 577 (finding individual rescission procedures to "unwind" hundreds or thousands of individual credit transactions did not promote judicial economy and efficiency); *Hamilton v. O'Connor Chevrolet, Inc.*, No. 02 C 1897, 2006 WL 1697171, at *12 (N.D. Ill. June 12, 2006) (finding class action device not superior due to the availability of an effective alternative plus the problems inherent in conducting hundreds or thousands of follow-on procedures regarding liability, actual damages, and emotional damages); *Glover v. Standard Fed. Bank*, 283 F.3d 953, 965 (8th Cir. 2002) (finding a loan-specific inquiry into services provided was required to determine liability and amount of damages warranted under RESPA); *Van v. Ford Motor Co.*, 332 F.R.D. 249, 290 (N.D. Ill. 2019) (finding individual Title VII lawsuits with significant money damages and attorneys' fees to be a viable option for hostile work environment claims, whereas liability could not be established on a class-wide basis and the plaintiffs' proposed litigation plan would necessitate hundreds of separate hearings); *Hyderi, supra* n.5.[6]

---

[6] *AT&T Mobility LLC v. Concepcion* is unpersuasive in this case. 563 U.S. 333 (2011). There the Supreme Court noted in dicta that the district court had concluded that claimants were better off pursuing claims pursuant to their arbitration agreement with AT&T, which provided a minimum of $7,500 and twice their attorney's fees if they obtained an arbitration award greater than AT&T's last settlement offer, than they would have been as participants in a class action, which could take months, if not years, and may merely yield an opportunity to submit a claim for recover of a small percentage of a few dollars. *Id*. at 351.

Accordingly, the Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

## CONCLUSION

For all of these reasons, Plaintiff's Motion for Class Certification [169][174] is granted. The Court certifies the following class under Rule 23(b): all individuals who used a virtual try-on feature on Amazon's mobile website or app while in Illinois on or after September 7, 2016. Excluded from the Class are: (1) any person who used such a virtual try-on feature only in model mode or for hair color; (2) any judge presiding over this action; (3) all members of any such judge's staff and immediate family; (4) Defendants; (5) any entities in which any Defendant has a controlling interest; (6) Defendant's employees, owners, officers, and directors. The Court appoints Keith James Keogh, Theodore Herbert Kuyper, and Timothy J. Sostrin, of Keogh Law, Ltd. as class counsel in this case.

Defendants filed an unopposed motion to seal [196] wherein they move the Court to maintain under seal the unredacted version of Plaintiffs' motion for class certification [174] and Exhibit 4 thereto. Defendants' motion [196] is granted for good cause shown for the reasons set forth in Defendants' motion. The unredacted version of Plaintiffs' motion for class certification [174], and Exhibit 4 thereto, shall remain under seal. The clerk is directed to unseal Exhibit 8 [174-2].

Defendants filed an unopposed motion to seal [213] wherein they move the Court to maintain under seal (i) the unredacted version of their memorandum of law in response to Plaintiffs' motion for class certification [212] and (ii) certain exhibits thereto containing trade

33

**A33**

secrets, confidential business information, and Plaintiffs' personally identifiable information. Defendants' motion [213] is granted for good cause shown for the reasons set forth in Defendants' motion. The unredacted versions of Defendants' memorandum of law and Exhibits A, B, D, E, G, H, and I thereto shall remain under seal. The clerk is directed to unseal Exhibits J [212-10], K [212-11], and L [212-12].

Plaintiffs' unopposed motion to seal [257] is denied without prejudice. Under Local Rule 26.2(b), "[t]he court may for good cause shown enter an order directing that one or more documents be filed under seal." Plaintiffs make no such showing other than to say that the exhibits are designated as "Confidential" pursuant to the Agreed Confidentiality Order entered on February 25, 2022 [28]. But, under the Agreed Confidentiality Order, the mere designation of a document as "Confidential" does not alone amount to the required "good cause" or allow for that document to be filed under seal. [28, Par. 7]. "The determination of good cause [to seal materials] cannot be elided by allowing the parties to seal whatever they want." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). A party hoping to file materials in secret must justify the claim of secrecy and "analyze the applicable legal criteria or contend that any document... may... legitimately... be kept from public inspection despite its importance to the resolution of the litigation." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002); *see also Bierk v. Tango Mobile, LLC*, No. 19 C 5167, 2021 WL 308834 (N.D. Ill. Jan. 29, 2021). Without any attempt to show "good cause" in the motion to seal, it cannot be granted as filed. And as filed, the motion to seal is denied. But the Court will allow the documents to remain provisionally sealed until 04/12/2024, to allow the Plaintiffs or Defendants to file a properly supported motion to seal if they so choose.

34

**A34**

Defendants' motion for leave to file sur-reply [262] is granted. Plaintiffs' motion for leave to file reply to Defendants' sur-reply [268] is granted.

This case is set for status hearing on May 9, 2024 at 9:30 a.m. for the purpose of setting a schedule for further proceedings. The parties are directed to confer regarding a schedule and are to submit a joint status report with a proposal (or competing proposals if they cannot agree) by May 6, 2024.

**SO ORDERED.**                                    **ENTERED: March 30, 2024**

_____
**HON. JORGE ALONSO**
**United States District Judge**

35

**A35**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TANYA N. SVOBODA,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 21 C 5336** |
| **v.** | ) | |
| | ) | **Judge Jorge Alonso** |
| **AMAZON.COM, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

For the reasons set forth below, Defendants' motion for reconsideration [295] is denied.

## STATEMENT

The Parties engaged in extensive briefing on Plaintiffs' Motion for Class Certification. (ECF Nos. 174, 212, 255, 262-1, 268-1, 280, 281, 282, 284.) On January 10, 2024, the Court heard oral argument on Plaintiffs' motion. On March 20, 2024, the Court granted Plaintiffs' motion for class certification. (ECF No. 291). On April 11, 2024, Defendants filed a motion to reconsider the Court's Order pursuant to Federal Rule of Civil Procedure 54(b). (ECF No. 295.) The Court assumes familiarity with its Order on class certification, in which it set forth a detailed summary of the background of the case. (ECF No. 291.)

A district court has the authority to reconsider its orders at any time prior to final judgment. *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) ("Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment, thereby bestowing sweeping authority upon the district court to reconsider[.]"); *see Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015) (noting that Rule 60(b) applies only to a "final judgment, order, or proceeding," and that Rule 60(b) "does not limit a district court's discretion to reconsider 'an interlocutory judgment or order at any time prior to final judgment.'").

Motions for reconsideration are disfavored. They clutter the Court's docket, and, when parties make arguments they have already made or could have made, they waste judicial resources. A court "ought not to revisit an earlier ruling in a case absent a compelling reason, such as manifest error or change in the law, that warrants reexamination." *Tyrer v. City of South Beloit*, 516 F.3d 659, 663 (7th Cir. 2008) (citations omitted); *see also Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251–52 (7th Cir. 1987). Motions to reconsider are not meant to give parties a second bite at the apple. *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).

Defendants identify no change in law or fact in support of their request. Defendants' motion for reconsideration simply rehashes the same arguments made in the previously submitted briefing

A36

and at oral argument that this Court found unpersuasive for purposes of class certification. In summary, Defendants reargue that the Court should reconsider its order on class certification for three reasons: (1) Plaintiffs have not established that the location of VTO use can be proven on a class-wide basis, (ECF No. 295 at 3-7), (2) the Court should exclude from the class individuals for whom Amazon does not have contact information, (*id.* at 10-12), and (3) that either (a) the class representatives are inadequate or atypical representatives for not having used VTO eyewear or (b) that the Court should have decided the applicability of BIPA's healthcare exception at class certification (*id.* at 7-10).[1]

Defendants briefed these arguments extensively and presented them to the Court at oral argument. (ECF Nos. 212 at 5-8, 10-17, 24-25; 261-2 at 1; 279 at 15:7-22:7, 23:18-24:3, 24:6-11; 280; 282.) The Court considered Defendants' arguments in granting class certification. (ECF No. 291 at 12-14; 21-25.)[2] The Court finds no manifest error in its decision to grant class certification, and accordingly Defendants' motion for reconsideration (ECF No. 295) is denied.

**SO ORDERED.**                                    **ENTERED:**

_____
**HON. JORGE ALONSO**
**United States District Judge**

---

[1] Defendants made one new argument in their motion regarding the retroactivity of *Rosenbach v. Six Flags Entm't Corp.* 129 N.E.3d 1197 (Ill. 2019). (ECF No. 295 at 12.) Defendants have since abandoned that argument because none of the alleged violations predate that opinion. (ECF No. 315 at 14 n.6.)

[2] The Court disagrees that it should have decided the applicability of BIPA's healthcare exemption at class certification. To the extent that Defendants contend that the healthcare exemption bars certain class members from recovery, they are free to make that argument at summary judgment. But resolving the issue was not necessary to the Court's class certification decision, and therefore not appropriate at that stage. (ECF No. 291 at 12-15; *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").